**UNITED STATES of America**

v.

**Lewis Edward ISENBERG, Jr., and Robert Glenn Isenberg.**

**Crim. No. 72–033.**

United States District Court,
W. D. Pennsylvania.

May 24, 1972.

Henry G. Barr, Asst. U. S. Atty., Pittsburgh, Pa., for the United States.

Leonard L. Martino, Pittsburgh, Pa., for defendant, Lewis Edward Isenberg, Jr.

Stanley W. Greenfield, of Capozzi, Greenfield & Minsky, Pittsburgh, Pa., for defendant, Robert Glenn Isenberg.

## OPINION AND ORDER

MARSH, Chief Judge.

About ten minutes before 5:00 o'clock in the afternoon of Monday, December 20, 1971, two men, armed with sawed-off shotguns, entered the Reynolds-Transfer Office of the First National Bank of Mercer in Greenville, Pennsylvania, threatened three female tellers with harm, and ordered them to put the bank's money into a satchel which one of the robbers threw on the floor. The robbers took $21,799.96 from the possession of the bank. The taller of the two robbers wore a ski mask covering the lower half of his face; the shorter robber did not have a mask on his face.

On March 28, 1972, the defendants, Lewis Edward Isenberg, Jr. and Robert Glenn Isenberg, were indicted in two counts for this bank robbery, §§ 2113(a) and 2113(d), 18 U.S.C.

After conviction by a jury, the defendants moved for a new trial. The motion assigned the following seven reasons:

"1. The verdict is contrary to the evidence.

"2. The verdict is contrary to the weight of the evidence.

"3. The verdict is contrary to the law.

"4. The Court erred in admitting the bait money list, Government Exhibit 8, and, therefore, the bait money as well.

"5. The Court erred in admitting the ski mask and raincoat allegedly worn by the robbers, Government Exhibit 16 and 17.

"6. The Court erred in permitting the eyewitness in-court identification of Defendant, LEWIS EDWARD ISENBERG, by Clara Cameron [sic].

"7. The Court erred in summarizing the prosecutions evidence at length where the Defendants did not take the stand and presented no other evidence."

In my opinion, the motion should be denied.

The chain of circumstances implicating the defendants as the robbers was strong and convincing. In addition, Lewis Isenberg was implicated by the direct evidence of Clara Campbell, a bank teller, who positively identified him as the shorter of the two robbers; and when Lewis Isenberg was arrested he was in possession of a $10 bill which was part of the bait money stolen from the bank by the robbers.

The evidence discloses that prior to the robbery, Robert and Lewis Isenberg, cousins, were living with Lewis' father at Faye Terrace Housing Project near Greenville; that on December 11, 1971, in company with Lewis Isenberg, Sr., they drove to Jim's Garage in a turquoise Corvair bearing a temporary Maryland license and attempted unsuccessfully to borrow from Robert Hoak, the garage manager, shotguns or pistols to use in robbing a bank or loan company. A couple of days later Lewis, Sr., in the presence of the defendants borrowed a shotgun from Robert Knapp to go rabbit hunting, and, although not identified as one of the sawed-off shotguns used in the robbery, up to the date of trial it had not been returned to Knapp.

At about 5:00 o'clock, after the robbery, the defendants were observed driving their turquoise Corvair a short distance from the bank. They were later observed at the home of Lewis, Sr., where they remained possibly up to 9:00 o'clock in the evening. They were not seen in or near Greenville after December 20, 1971.

The next day, December 21st, Laura Cameron, an aunt of one of the defendants, purchased a Corvette from Raymond Noell in Maryland.[1] There was convincing evidence that Lewis Isenberg drove this Corvette across the country to Flagstaff, Arizona, where he and Robert were arrested in an apartment for an unrelated crime.

While the turquoise Corvair driven by the defendants was parked in Jim's Garage prior to the robbery, a ski mask was observed in the rear seat; there was testimony that this ski mask looked like a ski mask (Exhibit 17) which was found by the police on a road leading south from Greenville in the early morning of December 21st. The taller of the two robbers wore a red and blue ski mask with figures of hockey skaters on the top. The ski mask found on the road was red and blue and had figures of hockey skaters on the top. *Cf.* Exhibit 17 with Exhibits 5A and 6A.

Robert Isenberg, who was taller than Lewis, dyed his blond hair black on the day before the robbery. After his arrest in Flagstaff, Robert Isenberg was interviewed by F.B.I. Agent David Small on January 7, 1972, in connection with the Pennsylvania bank robbery. Robert told the Agent that he had been in or around Flagstaff on December 20th and in the area for at least three or four weeks doing a lot of drinking; that he had purchased a new Chevrolet in Flagstaff and paid $1070 in cash for it. When Robert was arrested in the apartment occupied by him and Lewis in Flagstaff, he was found hiding in an attic. Robert's statement that he had been in Flagstaff on the date of the robbery was proved to be false by several uncontradicted witnesses who testified that from December 11, 1971 through December 20, 1971, Robert and Lewis were in the vicinity of Greenville, Pennsylvania.[2]

The bank cameras were activated during the robbery and the photograph of the smaller robber was identified by Robert Hoak as being that of Lewis Isenberg. Lewis Isenberg's photographs were taken in Flagstaff, Arizona, after his arrest in that place, and the jury had the Flagstaff photographs of Lewis (Exs. 13, 13A, 13B, 13C) to compare with the bank camera photographs of

---

1. The fact that Mrs. Cameron paid $3,000 in cash for the Corvette was excluded from the evidence.

2. The witnesses who saw the defendants near Greenville on and prior to December 20, 1971, were Robert Hoak, Robert Knapp, Linda Knapp, Michael Vigus, Thomas Crespo, and Philip Owens. Between 4:30 and 4:45 o'clock in the afternoon, prior to the robbery, John Lucas and James McNicholas saw a turquoise Corvair near their place of business (Hall's Transit, Inc. Terminal) which was not far from the bank; they saw two men get out of the Corvair; one of them carried a satchel; shortly thereafter the men returned, got into the Corvair and drove away.

the unmasked robber (Exs. 3A, 4A), which Robert Hoak had identified as Lewis. Lewis Isenberg was clean shaven on December 20, 1971, and in Flagstaff on January 7, 1972. At the trial, Lewis wore a beard or goatee and glasses.

■ In view of the direct and circumstantial evidence produced by the prosecution implicating Lewis Isenberg, and the circumstantial evidence produced implicating Robert Isenberg, the verdict of the jury was not against the evidence and was according to law. It was sufficient to find each defendant guilty beyond a reasonable doubt.

■ The defendants argue that error was committed in admitting the bait money list (Ex. 8) and the bait money (Ex. 11) in evidence. The testimony establishes that the bait money list for teller's window R–3 was prepared by Rae Ann Skiff, a bank employee, on April 26, 1971, and forwarded to bank manager, Wallace Feather; that Feather dated the bait money list on April 28, 1971, with a date stamp unlike any other in the bank's office, made a photocopy, retained the original list and sent the photocopy to William Quinn, the bank security officer; that Quinn received this photocopy and after the robbery he made three more copies of it and gave them to F.B.I. Agent James Pickerill.[3] Wallace Feather testified that he "thought" certain ink markings were on the list when he received it; Agent Pickerill testified that he put the markings on the list given to him by Quinn. This testimonial variance was for the jury to resolve and did not make the list "inadmissible" *per se*. Mr. Feather's date stamp on the list, the stamp date's proximity in time to the preparation of the bait money list by Mrs. Skiff for window R–3, and Quinn's testimony that this was a copy of the bait money list for window R–3 which had been sent to him by Feather, and which he gave to Agent Pickerill established a chain of

possession from which the jury could find that the list (Ex. 8) admitted into evidence was an accurate list of the bait money taken from window R–3 by the robbers. It follows that if Exhibit 8 was admissible then the $10 bill, the serial number of which was included in that list, and which was found in the possession of Lewis Isenberg in his sock at the jail at Flagstaff, was admissible in evidence.

■ The defendants complain that a ski mask and a dark raincoat (Exhibits 17 and 16) were admitted in evidence. In the morning after the robbery Officer John Miller of the Pymatuning Township Police found these articles alongside of Route 846, a couple of miles from Greenville. Route 846 was one of the possible escape routes which could have been used by the robbers. A comparison of the ski mask found by Officer Miller with the ski mask worn by the taller robber in the bank camera photographs shows that they are identical,—both have a unique design of a hockey player embossed upon them. Comparison of the raincoat in the bank camera photograph with the one found along Route 846 (Ex. 16) shows that it is at least similar to the dark coat worn by the taller robber. The fact that these still useful articles of clothing were found discarded on the morning after the robbery, on the side of an available escape route, plus their similarity to the articles worn by the taller robber, creates a logical inference that these articles were the ones used in the robbery. Two witnesses, Michael Vigus and Thomas Crespo, testified that they saw a ski mask and other clothes in the back of defendants' Corvair while it was parked at Jim's Garage prior to the robbery; and Vigus testified that the ski mask found by the police (Ex. 17) bore the same colors as and resembled the one he saw on the back seat of the defendants' car. In our opinion, the aforementioned circumstances surrounding a ski

---

3. The original of Exhibit 8 and Quinn's copy were destroyed prior to trial. Ex-

hibit 8 was one of the copies given to Agent Pickerill.

mask and dark coat justified admission of those exhibits into evidence. The weight to be given this evidence was for the jury.

The defendants contend that the court erred in permitting the eye-witness in-court identification of Lewis Isenberg by Clara Campbell. We presume that the basis for this contention is the confrontation which occurred between Clara Campbell and Lewis Isenberg in court at the suppression hearing held the day before the commencement of the trial. On behalf of Lewis, it was argued that since Mrs. Campbell observed Lewis in the courtroom at the counsel table during the suppression hearing, any in-court identification she might make would be tainted and inadmissible.

■ A Wade hearing was held on this issue at which evidence was presented. From this evidence the court found as a fact that Clara Campbell's presence at the suppression hearing was not an intentional confrontation arranged by the prosecution and that, in any event, her in-court testimony was not tainted as a result of this confrontation. It was established to the satisfaction of the court by clear and convincing testimony that Mrs. Campbell's in-court identification of Lewis Isenberg stemmed from an independent source, namely, her observation of him at the bank when he robbed her. Counsel for Lewis Isenberg, who was in court at the suppression hearing, cross-examined Mrs. Campbell on this issue at the Wade hearing and at the trial. *Cf.* United States v. Wade, 388 U.S. 218, 240, 87 S. Ct. 1926, 18 L.Ed.2d 1149 (1967); United States v. Carney, 455 F.2d 925 (3d Cir. 1972); United States v. Furtney, 454 F.2d 1 (3d Cir. 1972); United States v. Hardy, 451 F.2d 905 (3d Cir. 1971). No reason was advanced by counsel for Lewis Isenberg at argument as to why these findings should be changed. We think this ground for a new trial is without merit.

■■ Finally, the defendants argue that the court erred in summarizing the prosecution's evidence at length when the defendants did not take the witness stand and presented no evidence. We disagree with the defendants' contention in this regard. The fact that a defendant produces less evidence than the prosecution, or no evidence at all, does not relieve a trial judge of his duty to assist the jury in arriving at a just conclusion by summarizing the evidence. Gordon v. United States, 438 F.2d 858, 879 (5th Cir. 1971); United States v. Dalli, 424 F.2d 45, 49 (2d Cir. 1970); United States v. Dockery, 417 F.2d 330, 332 (4th Cir. 1969).

An appropriate order will be entered.