UNITED STATES of America, Appellee,

v.

Michael Jerome COLCLOUGH, Appellant.

UNITED STATES of America, Appellee,

v.

John Lawrence SULLIVAN, Lester Bromell, Jr., Appellants.

Nos. 75-2365, 75-2366.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 8, 1976.

Decided Jan. 19, 1977.

**938**

Arthur L. Lane, Fayetteville, N. C., for appellant in No. 75–2365.

Jack E. Carter and Carl A. Barrington, Jr., Fayetteville, N. C. (Barrington, Jones & Witcover, Fayetteville, N. C., on brief), for appellants in No. 75–2366.

Joseph W. Dean, Asst. U. S. Atty., Raleigh, N. C. (Thomas P. McNamara, U. S. Atty., James T. Stroud, Jr., Asst. U. S. Atty., Raleigh, N. C., on brief), for appellee in Nos. 75–2365 and 75–2366.

Before CRAVEN and RUSSELL, Circuit Judges, and MERHIGE, District Judge.*

DONALD RUSSELL, Circuit Judge:

The three defendants, indicted jointly for armed robbery, appeal their convictions, following a jury trial. The circumstances of the crime and the defendants' connection therewith, as developed in the record, are thus summarized:

Three black males, with stocking masks over their heads, and two of them armed with an approximately .38 caliber automatic pistol and a .22 or .25 caliber automatic pistol, entered the orderly room at a Battalion Headquarters at Fort Bragg, North Carolina, sometime between 3:15 and 3:20 o'clock on the morning of June 6, 1975, and robbed at gun-point three soldiers, who were in the room at the time either sleeping or reclining on couches. The robbers took the wallets, including their identification cards, of two of the soldiers. One of the robbers wore a red shirt with blue jeans and another a blue shirt with jeans. In the robbery, the robbers had used the guns as well as a butcher knife to overpower the soldiers. When they had forced the soldiers to give them their wallets and money, the robbers compelled the soldiers to lie on the floor and tied their hands, warning them not to get up for ten minutes. The robbers then left. The soldiers quickly extricated their hands and called Military Police at the Fort. They identified their assailants as three black males and described the clothing worn by two of the robbers. An all-points alert was promptly issued at 3:30 a. m. through the Military Police Radio Communications Center. The bulletin gave the identifying information supplied by the soldiers who had been robbed.

There were two military police patrols in the general area where the robbery had occurred. Both immediately rushed to the intersection of Riley and Butner Roads on the military reservation. This intersection

* Sitting by designation.

was approximately two miles from the location of the robbery and apparently was a point where a car coming from that direction would pass. The military police estimated that they arrived at this intersection less than ten minutes after the bulletin had been issued by the Communications Center. Within a minute or so of their arrival, they observed a car approaching from the direction of the robbery. This car stopped for the red light at the intersection. The military police noted that there were three black males in the car and that one was wearing a red shirt and another a blue shirt. The officers stopped the car as it pulled away from the intersection, inquired, without success, the names of the three occupants, and then ordered the occupants to get out of the car. As the defendant Sullivan, the driver of the car, wearing a blue shirt and blue jeans, was stepping out of the car, one of the officers saw what appeared to be a stocking protruding from Sullivan's rear pocket. Upon removing it, the object was found to be part of a stocking, knotted at one end with two holes cut in it. The officers then searched the three persons and the car for weapons. The defendant Bromell had a .22 caliber automatic pistol, fully loaded with a round in the chamber, in his right rear pocket; a loaded .9 millimeter automatic pistol with a magazine containing .38 caliber bullets, with a round in the chamber, was found sticking out from underneath the right passenger seat of the automobile in which the defendants were riding. The defendants were then taken under arrest to the Military Police Station. Their car was, also, taken into possession by the Military Police and was driven to the Station, where it was locked by the officers.

After the defendants had been brought to the Station, the officers continued without success their efforts to secure the identity of the defendants. During this effort, the defendant Sullivan expressed some concern for his wallet, which he said was in the car. On hearing this, one of the officers, believing that such wallet might provide some means of identification of the defendants, went to the car, unlocked it and quickly located Sullivan's wallet on the front seat. This wallet included Sullivan's identification card. As the officer observed Sullivan's wallet in the vehicle, he saw another wallet wedged between the front seat and the floor of the car. On examination, this wallet included the identification card of Harvey Hardy, one of the robbery victims. The military police apparently did not at this time know the names of the robbery victims and incorrectly assumed that Hardy might be one of the persons arrested. The officer, also, found on the floor in the back seat a third wallet containing an identification card and a driver's license in the name of Pyfferoen, another of the robbery victims. Again, the connection of Pyfferoen with the robbery was unknown to the officer at that time, though it was obvious that Pyfferoen was not one of the robbers, since his picture showed he was white. The officer, however, took with him only the wallet of Sullivan and left the other wallets in the car, locked. Later, the car was taken to the Military Police Impoundment Lot, where, in the normal procedure, an inventory search was conducted and the two wallets of Hardy and Pyfferoen, along with a butcher knife and another stocking mask, were taken into custody.

Prior to trial no motion was made to suppress the evidence seized during the searches of the car, even though the defendants were fully cognizant that the Government had such evidence and intended to use it at trial. The defendants did, though, at trial, move to suppress and the District Court sustained the motion with reference to the butcher knife and the second stocking mask.

The defendants, in appealing from the jury guilty verdicts, assert various claims of error. All three claim error in the admission of the fruits of the automobile search; the defendant Sullivan would find an illegal taint in his in-court identification by one of the robbery victims; and the defendant Colclough complains of the refusal of the District Court to direct a verdict of acquittal in his favor. We find no merit in any of the claims of error and affirm.

In objecting to the car search, the defendants seemingly do not object to the search at the time the defendants were stopped and arrested. This appears manifest from the fact that the defendants would excuse their failure to move to suppress until trial because they had assumed the material seized resulted from the search at the time of arrest and not an hour or so later after the defendants had been removed to the Military Police Station.[1] Even if it be assumed, though, that the defendants do not concede the validity of the car search at the time of the arrest, the validity of such search at the scene of the arrest is beyond question. The defendants met the description of the robbers. They were observed driving from the direction of the robbery within minutes after the robbery. All of this occurred in the early morning hours when the very presence of the defendants on the road would excite curiosity.[2] When stopped, the defendants refused to give their names.[3] As they alighted from the car, one was observed to have a gun and another had a stocking mask protruding from his pocket, both likely instruments in an armed robbery. These facts were sufficient to justify a warrantless vehicle search incident to an arrest. *United States v. Chulengarian* (4th Cir. 1976) 528 F.2d 553; *United States v. Diggs* (1975) 173 U.S.App.D.C. 95, 522 F.2d 1310.

The subsequent search of the vehicle at the Police Station, in an effort to secure evidence of the defendants' identity, was likewise valid. *Texas v. White* (1975) 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209; *Cardwell v. Lewis* (1974) 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325; *Chambers v. Maroney* (1970) 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419; *United States v. Chulengarian, supra; Hilleary v. Wallace, supra.*[4] Equally valid was the third inventory search conducted at the Military Impoundment Lot. *South Dakota v. Opperman* (1976) 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000; *Cady v. Dombrowski* (1973) 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706; *United States v. Chulengarian, supra ; Cabbler v. Superintendent, Va. State Penitentiary* (4th Cir. 1975) 528 F.2d 1142, 1145–6 (appeal pending).[5]

The challenge to the in-court identification by Pyfferoen of the defendant Sullivan is not based on the lack of an opportunity on the part of Pyfferoen to observe the defendants at the time of the robbery. There was ample evidence of such opportunity. The stocking used by the defendants to conceal their faces during the robbery were, according to the testimony, "transparent" and could be "seen through." While he had not observed the other defendants sufficiently to identify them, Pyfferoen had seen the defendant Sullivan

1. "MR. BARRINGTON: May it please the Court at this point, perhaps a notification for the record or for Your Honor and the record, apparently from the answers that this witness is going to give, the wallet which was found was found sometime later after the car had been secured. This was contrary to what the defense understood the evidence to be at the preliminary hearing.

"We feel perhaps that we are in a situation where, had we known this, a motion to suppress would have been made. Our indication was that the evidence—certain evidence, which I understand they are getting ready to introduce through this witness, was found at the time the men were stopped. We find now that the evidence was found some minutes or hours later by the MP's in the search of the car which was already impounded and under Government control.

"We would at this time accordingly make a motion to suppress."

2. *See Hilleary v. Wallace* (4th Cir. 1975) 519 F.2d 786, 787; *Orricer v. Erickson* (8th Cir. 1973) 471 F.2d 1204, 1207.

3. For the effect of refusal to answer questions or to identify oneself by an arrestee, *see Bailey v. United States* (1967) 128 U.S.App.D.C. 354, 389 F.2d 305, 316 (Lowenthal, J., concurring), and *Sewell v. United States* (8th Cir. 1969) 406 F.2d 1289, 1292.

4. The right to search the wallets incident to this search is clear. *United States v. Gardner* (10th Cir. 1973) 480 F.2d 929, 931, *cert. denied* 414 U.S. 977, 94 S.Ct. 297, 38 L.Ed.2d 220; *United States v. Young* (D.Del.1974) 369 F.Supp. 540, 541.

5. The fact that there were three searches of the car in this case is unimportant. That was the exact situation in *United States v. Chulengarian, supra.* The important fact is that each search was valid under the circumstances.

as the latter advanced straight towards him until he came within one and a half or two feet of him. Though Pyfferoen expressed immediately after the robbery some uncertainty about his ability to identify the robbers, he immediately and spontaneously identified positively and without any hesitancy or doubt the defendant Sullivan as one of the robbers, as the latter was seen by Pyfferoen accidentally for the first time since the robbery in a crowd of other blacks without anything special to attract or direct Pyfferoen's attention to Sullivan. This spontaneous recognition, as well as the in-court identification, was based on Pyfferoen's observation of Sullivan at the time of the robbery. The defendant Sullivan's challenge to the in-court identification concerns this earlier accidental confrontation. This earlier confrontation occurred on the first day of the criminal term of court at which the defendants were to be tried and to which the robbery victim Pyfferoen had been subpoenaed. Pyfferoen emerged from the men's room and unexpectedly encountered the defendant Sullivan in a group in the hall outside the courtroom. According to his testimony, he immediately singled out Sullivan, and recognized him as one of the robbers. It should be repeated that at the time Pyfferoen recognized Sullivan in the hall, the latter was standing in a group of black males and females and there was nothing about him to indicate he was a defendant. He testified that at the time of the encounter he "didn't have any doubt in [his] mind," he was "one hundred per cent positive" and he was sure "instantaneous[ly]" that Sullivan was the one. Between the robbery and the encounter in the hall, Pyfferoen had not observed any line-up, had not been shown any photographic display and had not seen any one of the defendants until "[he] came directly in front of [Sullivan] * * * outside in the hallway."

 Sullivan contends that this identification of him by Pyfferoen in the hall was unduly suggestive and tainted the subsequent in-court identification. In support of this claim, he argues that the recognition of Sullivan by Pyfferoen was not spontaneous but resulted from three to four hours' deliberation. He, also, suggests that, as evidence of the uncertainty of his identification, he delayed for a considerable time in advising the United States Attorney that he had seen and recognized Sullivan in the corridor of the courthouse. The difficulty with all these contentions of Sullivan is that they are either contradicted or explained in the record. Thus, Pyfferoen testified categorically that his identification of Sullivan in the corridor was immediate and spontaneous. He assigned his inability to speak to the United States Attorney as the explanation for his failure to inform the United States Attorney earlier about his recognition of Sullivan.

There is no dispute in the record that the hallway confrontation was not plannned[6] but was accidental and inadvertent. Nor is there anything in the record to contradict Pyfferoen's testimony that his identification of Sullivan in the hallway was spontaneous and positive.[7] Unlike the situation in *United States v. Matlock* (6th Cir. 1974) 491 F.2d 504, 505, *cert. denied* 419 U.S. 864, 95 S.Ct. 119, 42 L.Ed.2d 100; *Mock v. Rose* (6th Cir. 1972) 472 F.2d 619, 621, *cert. denied* 411 U.S. 971, 93 S.Ct. 2165, 36 L.Ed.2d 693, and *United States v. Hamilton* (9th Cir. 1972) 469 F.2d 880, 883, there was nothing about Sullivan's appearance or condition at the time of the out-of-court confrontation, such as being handcuffed or in prison garb, to suggest that he was a defendant in a

---

**6.** Whether the "show-up" must be arranged directly or indirectly by the prosecution in order to bring the Fourteenth Amendment into play, *see United States v. Matlock, supra,* 491 F.2d at 505; *United States v. Hamilton, supra,* 469 F.2d at 883, n. 3; *United States v. Furtney* (3d Cir. 1972) 454 F.2d 1, 3 (only "an *intentional* 'pretrial confrontation' [is] proscribed by the safeguards enunciated in Wade," italics added); *United States v. Kulp* (E.D.Pa.1973) 365 F.Supp. 747, 762, *aff'd* (3d Cir.) 497 F.2d 921.

**7.** *See, United States v. Jackson* (9th Cir. 1971) 448 F.2d 963, 966–7, *cert. denied* 405 U.S. 924, 92 S.Ct. 970, 30 L.Ed.2d 796.

criminal prosecution.[8] While it is "always necessary to 'scrutinize *any* pretrial confrontation . . .'" for undue suggestiveness as conducive to irreparable mistaken identification, *Kirby v. Illinois* (1972) 406 U.S. 682, 690–1, 92 S.Ct. 1877, 1883, 32 L.Ed.2d 411[9] it seems clear under the authorities that a completely unplanned, accidental confrontation, particularly such as that here where there was nothing to point to the accused as the defendant or as a suspect, is not violative of the due process rule against an unduly or unnecessarily suggestive confrontation justifying an inference of possible irreparable mistaken identification. *United States v. Matlock, supra; United States v. Neverson* (1972) 150 U.S. App.D.C. 133, 463 F.2d 1224, 1231; *Mock v. Rose, supra,* 472 F.2d at 621; *United States v. Kulp, supra; United States v. Isenberg* (W.D.Pa.1972) 343 F.Supp. 25, 29, aff'd (3d Cir.) 475 F.2d 1397, *cert. denied* 412 U.S. 941, 93 S.Ct. 2783, 37 L.Ed.2d 401; *Ali Model Code of Pre-Arraignment Procedure* (final text) at 438–9 (1975). It follows that the finding of the trial judge that such confrontation was not so "unnecessarily suggestive" as to be violative of Sullivan's due process rights and that there was an independent source for Pyfferoen's identification was manifestly not erroneous and is accordingly affirmed.

■ Finally, the defendant Colclough contends that the evidence was insufficient to support his conviction. The Government's case was admittedly circumstantial but a defendant may, in a proper case, be convicted on circumstantial evidence as well as on testimonial evidence. This is such a case. *United States v. Taylor* (4th Cir. 1973) 482 F.2d 1376, 1377; *United States v. Bobo* (4th Cir. 1973) 477 F.2d 974, 989, *cert. denied* 421 U.S. 909, 95 S.Ct. 1557, 43 L.Ed.2d 774; *United States v. Van Fossen* (4th Cir. 1972) 460 F.2d 38, 40. The defendant Colclough was in the car in which the wallets of the men were found, within minutes after the robbery. His attire was like that worn by one of the robbers. There were three persons in the car, which had just come from the immediate direction of the robbery and which was the only other car seen in the neighborhood at that early hour. There were three individuals involved in the robbery. At least one of the occupants of the car was identified at trial as one of the robbers. All the defendants refused to give their names. Pistols similar to those used in the robbery were discovered either on the person of an occupant of the car or in the car. Stocking masks such as those used in the robbery were also discovered in the vehicle. This evidence was sufficient to warrant the submission of Colclough's guilt to the jury.

The convictions of the defendants are accordingly affirmed.

---

8. In the three cases cited such circumstances were not found to be so unduly suggestive as to render inadmissible the identification testimony of the witnesses.

9. Emphasis in opinion.