916 F.2d 710
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Daniel Louis PATTERSON, Petitioner-Appellant,
v.
Richard SINGLETON, Maryland House of Correction, Attorney
General of the State of Maryland, Respondents-Appellees.
 No. 89-7767.
 United States Court of Appeals, Fourth Circuit.
 Argued May 10, 1990.
Decided Oct. 23, 1990.
 
 1
 Appeal from the United States District Court for the District of Maryland, at Baltimore. J. Frederick Motz, District Judge. (CA-89-480-JFM)
 
 
 2
 Robert Eugene McGowan, Bowie, Md., for appellant.
 
 
 3
 Diane Elizabeth Keller, Assistant Attorney General, Baltimore, Md., (Argued), for appellees; J. Joseph Curran, Jr., Attorney General, Baltimore, Md., on brief.
 
 
 4
 D.Md.
 
 
 5
 AFFIRMED.
 
 
 6
 Before WIDENER and PHILLIPS, Circuit Judges, and JAMES B. McMILLAN, Senior United States District Judge for the Western District of North Carolina, sitting by designation.
 
 McMILLAN, Senior District Judge:
 
 7
 Daniel Louis Patterson, the petitioner-appellant, was tried in February 1985 in the Circuit Court for Prince George's County, Maryland, on six charges arising from the September 7, 1983, kidnapping of Ruth Ascher. He was convicted on all six charges, and, on March 1, 1985, was sentenced to 35 years in prison.
 
 
 8
 After exhausting his state remedies, Patterson filed a petition for writ of habeas corpus in the United States District Court for the District of Maryland. In his petition, Patterson claimed that the identification testimony of two different witnesses was inadmissible under the due process clause of the United States Constitution. He also argued that he was denied effective assistance of counsel.
 
 
 9
 The district court denied the petition. Patterson appealed.
 
 
 10
 For the reasons set forth below, we affirm the decision of the district court.
 
 I.
 
 11
 The competent evidence will support the following findings:
 
 
 12
 On Wednesday, September 7, 1983, at about 1:30 in the morning, Ruth Ascher drove her automobile into the parking lot of her apartment in Prince George's County, Maryland. She was still sitting in the front seat of her car a minute or two later, collecting her belongings, when two men approached her, threatened her with a knife, climbed into the car, and drove away, taking her with them. One of the men (the man in the rear seat) sexually molested Ascher (short of actual rape) while they were driving. Eventually the men released her and drove off in her car, taking some of her belongings with them.
 
 
 13
 Two days later, on September 9, 1983, some of the property taken from Ascher was found in a vacant lot by a young boy named George Rogers. The witness William Rogers, father of George, testified that, several nights after September 9, 1983, he was driving by that vacant lot when he saw a young man run across the street, throw something into a car, and drive off.
 
 
 14
 On July 26, 1984, more than ten months after the crime, a police officer, Detective Herl, showed Ascher photographs of several suspects. Ascher picked out a photograph of the appellant, Daniel Patterson, and identified him as one of the men who had assaulted her on September 7, 1983.
 
 
 15
 On October 17, 1984, Daniel Patterson was charged with kidnapping, assault with intent to rape, third degree sexual offense, unlawfully carrying a knife with intent to injure, armed robbery and robbery. Patterson pleaded not guilty to all charges.
 
 
 16
 Before the trial, Patterson moved to suppress evidence that Ascher had identified him from a photographic lineup. At the suppression hearing, Patterson's counsel questioned Ascher and the police officer who had conducted the lineup about the circumstances surrounding the presentation of the photographs to Ascher. Patterson's counsel also questioned Ascher about her ability on the night of the crime to see the men who had assaulted her.
 
 
 17
 The trial court did not permit Patterson's attorney to question Ascher at the suppression hearing about how the crime occurred, about the appearance of the men who assaulted her, or about whether she had reported any description of her assailants to the police. Instead, the court told Patterson's counsel that he would "restrict[ ] you, for the record, to [Ascher's] opportunity to see the individuals. Then we are going to talk about the photo array and the photo array only. This is not a discovery vehicle." Joint Appendix (JA) at 13 (emphasis added).
 
 
 18
 At the completion of the suppression hearing, the court concluded that the photographic lineup had not been suggestive, and that Ascher had been able to observe her assailants at the time of the crime. The court denied the motion to suppress.
 
 
 19
 At trial, Ascher identified Patterson as one of the men who had assaulted her, and testified that she had previously identified him from the photographic lineup.
 
 
 20
 William Rogers was also called to testify at trial. He testified that in February 1985, on the first day of Patterson's trial, he had accompanied his son George to the courthouse, had looked into the courtroom, had seen Daniel Patterson inside the courtroom, and had recognized him. Rogers informed police that he was able to identify Patterson. Rogers then testified that Patterson was the man that he had seen in September 1983, nearly a year and a half earlier, running across the street--at night--near the vacant lot where Ascher's property had been found! Patterson's counsel cross-examined Rogers on his ability to see the man and remember his appearance.
 
 
 21
 Patterson did not testify in his own defense.
 
 
 22
 Patterson was convicted of all the offenses with which he was charged and sentenced to 35 years' imprisonment. He appealed his conviction to the Maryland Court of Special Appeals, which affirmed the conviction. He filed a petition for writ of certiorari in the Maryland Court of Appeals. The petition was denied.
 
 
 23
 Patterson next filed a petition for post-conviction relief in the Circuit Court for Prince George's County, Maryland. In that petition, Patterson for the first time raised the claim that Rogers's courtroom confrontation with him was suggestive and unreliable, and that Rogers's in-court identification was therefore inadmissible under the due process clause. The circuit court stated that this claim was "not an issue to be reviewed under the Maryland Uniform Post Conviction Procedure Act." JA at 48F. The court further stated that Patterson's contention (that Rogers's identification was unreliable) simply raised a question as to the sufficiency of the evidence, and that Rogers's testimony was properly submitted to the jury. The circuit court denied Patterson's petition.
 
 
 24
 On February 16, 1989, Patterson filed a petition for writ of habeas corpus in the United States District Court for the District of Maryland. Patterson raised three grounds for relief:
 
 
 25
 (1) That at the hearing on his motion to suppress evidence of Ascher's photographic identification, the trial judge improperly limited the inquiry to the question whether the identification procedure was unduly suggestive;
 
 
 26
 (2) that admission of William Rogers's identification of Patterson violated Patterson's right to due process of law; and
 
 
 27
 (3) that trial counsel's failure to object to the admission of Rogers's identification of Patterson constituted ineffective assistance of counsel.
 
 
 28
 On July 26, 1989, the district court denied the petition. Patterson v. Singleton, No. JFM-89-480 (D.Md. July 26, 1989).
 
 II.
 A.
 
 29
 Patterson argues that the district court erred in holding that the trial court had correctly limited the scope of the suppression hearing. Patterson points out that at the suppression hearing, his counsel was not allowed to question witnesses regarding the description that Ascher gave of her attackers shortly after the crime. He argues that under the due process clause, the trial court was required to inquire into whether the identification was reliable under the "totality of the circumstances," regardless of whether the photographic lineup was conducted in a suggestive manner. Appellant's Brief at 5-13.
 
 
 30
 The due process clause protects defendants against admission of a photographic identification if the photographic lineup procedure "was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384 (1967). See also Neil v. Biggers, 409 U.S. 188, 196 (1972); Stovall v. Denno, 388 U.S. 293, 301-02 (1967). In determining whether a suggestive identification is constitutionally admissible, courts must look at "whether under the 'totality of the circumstances' the identification was reliable." Biggers, 409 U.S. at 199; Manson v. Brathwaite, 432 U.S. 98, 114 (1976). Courts, however, need not inquire whether an identification was reliable under the totality of the circumstances unless the identification procedure is first found to be suggestive. Manson, 432 U.S. at 114; Biggers, 409 U.S. at 199; Kubat v. Thieret, 867 F.2d 351, 357 (7th Cir.1989); United States v. Mays, 822 F.2d 793, 798 (8th Cir.1987); United States v. Russo, 796 F.2d 1443, 1452 (11th Cir.1986); Perron v. Perrin, 742 F.2d 669, 675 (1st Cir.1984); United States v. Leonardi, 623 F.2d 746, 754 (2d Cir.), cert. denied, 447 U.S. 928 (1980).
 
 
 31
 At the suppression hearing, Patterson's counsel thoroughly examined witnesses concerning the manner in which the photographic lineup was conducted. Counsel also questioned witnesses about Ascher's ability to view her assailants on the night of the crime. Based on the evidence presented at the hearing, the trial court concluded that the photographic lineup was not suggestive. Accordingly, the trial court was not required at the suppression hearing to allow further inquiry into the reliability of the identification. Instead, the court properly determined that Ascher's identification was sufficiently reliable to be presented to the jury. Manson, 432 U.S. at 116 (evidence of an out-of-court identification should be submitted to the jury unless there is a very substantial likelihood of irreparable misidentification).
 
 
 32
 The district court did not err in holding that the trial court properly limited the scope of the suppression hearing.
 
 B.
 
 33
 Patterson's second claim on appeal is that the district court erred in holding that state court procedural default barred it from considering Patterson's claim that the admission of William Rogers's identification testimony violated the due process clause. Patterson argues that the state court did not rely upon waiver in deciding that the testimony was admissible, and that Patterson never knowingly waived his claim that admitting the testimony violated the due process clause. Appellant's Brief at 13-16.
 
 
 34
 In Harris v. Reed, --- U.S. ----, 109 S.Ct. 1038 (1989), the Supreme Court held that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly ' states that its judgment rests on a state procedural bar." 109 S.Ct. at 1043 (emphasis added; citations omitted).
 
 
 35
 The Maryland Circuit Court's ruling regarding the identification of Patterson by William Rogers does not "clearly and expressly" rely on any state court procedural default. The entire discussion of this issue by the state court reads:
 
 
 36
 Petitioner's second contention is not an issue to be reviewed under the Maryland Uniform Post Conviction Procedure Act. The in-court identification of Petitioner by William Rogers is a matter which addresses the sufficiency of the evidence. Once identification evidence is deemed admissible, its reliability becomes an issue of fact to be resolved by the jury. Any uncertainty expressed by a witness regarding his identification or any factors which question a witness' credibility affects the weight placed on that evidence and not the issue of admissibility. C. Whitebread, Criminal Procedure, Sec. 18.04 at 362. Therefore, William Rogers' in-court identification of Petitioner was properly admitted and the jury was entitled to exercise its judgment, as it did.
 
 
 37
 JA at 48F-48G.
 
 
 38
 This language is not, by any stretch of the imagination, a "clear and express" reliance on state procedural default. It is, rather, a rejection of petitioner's claim on the merits.
 
 
 39
 The only possible reference to procedural default occurs in the sentence which reads, "Petitioner's second contention is not an issue to be reviewed under the Maryland Uniform Post Conviction Procedure Act." JA at 48F. This language is ambiguous at best, because the statute referred to provides many reasons why claims might be inappropriate for habeas review (e.g., failure to allege a violation of the Constitution); procedural default is just one of those reasons. In fact, the next sentence of the state court's memorandum and order suggests that review is somehow inappropriate under the Act because petitioner's claim "addresses the sufficiency of the evidence." Id.
 
 
 40
 In Harris, the state court's opinion "referred to" the state law principle that issues not presented on appeal are considered waived, and stated that the petitioner's federal claim "could have been raised" on direct appeal. The court also considered, and rejected, the petitioner's claim on its merits. The Supreme Court nevertheless held that under those circumstances federal habeas review was not barred, because the state court had not "clearly and expressly" relied on a state procedural bar.
 
 
 41
 In this case, any reliance on state procedural bar by the state court is even less clear and express than it was in Harris. For this reason, federal habeas review of Patterson's challenge to William Rogers's identification of petitioner is not barred.
 
 
 42
 The district court erred in concluding that state court procedural default barred it from considering Patterson's due process challenge to the admission of William Rogers's identification testimony.
 
 
 43
 This error is understandable in that the Supreme Court had decided Harris only five months before the district court decided this case. More importantly, this error is harmless.
 
 
 44
 Although the district court incorrectly held that Patterson's state court procedural default barred him from presenting his due process claim for federal habeas review, the court went on to consider whether that supposed waiver constituted ineffective assistance of counsel. In finding that it did not, the district court considered the merits of the due process claim, and held that "the circumstances of the identification were not so unreliable that as a matter of law the jury was required to be deprived of Rogers' testimony." Patterson v. Singleton, No. JFM-89-480, slip op. at 3 (D.Md. July 26, 1989).
 
 
 45
 Because the district court addressed and rejected the merits of Patterson's due process challenge to the admission of the testimony of William Rogers, the district court's holding that state court procedural default barred if from considering that challenge was clearly harmless error.
 
 C.
 
 46
 Patterson's final contention is that the district court erred in denying his claim of ineffective assistance of counsel. Patterson argues that the district court incorrectly placed upon him the burden of proving that his trial counsel's allegedly inadequate performance was prejudicial. Appellant's Brief at 20-21. In support of his argument, Patterson relies upon this court's decision in Kelly v. Warden, House of Correction, 701 F.2d 311 (4th Cir.1983). That decision, however, is no longer binding, because in Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court held unequivocally that "the defendant must show that the deficient performance prejudiced the defense." 466 U.S. at 687 (emphasis added).
 
 
 47
 Patterson also argues that he was denied effective assistance of counsel, and that his counsel's ineffectiveness prejudiced his defense. Appellant's Brief at 16-20. Patterson contends that Rogers's prior courtroom identification of him was so suggestive and unreliable that it tainted Rogers's in-court identification testimony. He therefore contends that his trial counsel committed serious and prejudicial error by failing to object to admission of Rogers's testimony.
 
 
 48
 In order to prevail in his claim of ineffective assistance of counsel, Patterson must show that counsel's performance was deficient, and that the deficient performance prejudiced his defense. Strickland, 466 U.S. at 687. In reviewing an ineffective assistance of counsel claim, courts ordinarily assume, nothing to the contrary appearing, that counsel's conduct was reasonable. Id. at 689.
 
 
 49
 Patterson contends that his trial counsel should have objected to Rogers's testimony because the previous courtroom confrontation was suggestive. However, Patterson does not point to any factors that his counsel knew or should have known that made the encounter suggestive. There is no evidence in the record that Rogers's spontaneous recognition of Patterson resulted from police wrongdoing, or that Patterson's appearance inside the courtroom suggested that he was the defendant in the case. See United States v. Colclough, 549 F.2d 937, 941-42 (4th Cir.1977).
 
 
 50
 Patterson also argues that trial counsel should have objected to admission of the testimony because it was unreliable. Even though the reliability of Rogers's identification testimony was questionable, it was not so questionable that trial counsel erred as a matter of law in failing to object to its admission. Instead of objecting, Patterson's trial counsel diligently cross-examined Rogers on the reliability of his identification.
 
 
 51
 Although, given the benefit of hindsight, one might question counsel's failure to object to Rogers's testimony, counsel's decision instead to challenge the testimony through cross-examination was not per se unreasonable, and certainly did not amount to the level of ineffectiveness required under Strickland.
 
 
 52
 The district court did not err in denying Patterson's claim based on ineffective assistance of counsel.
 
 
 53
 The decision of the district court is affirmed.
 
 
 54
 AFFIRMED.
 
 
 55
 WIDENER and PHILLIPS, Circuit Judges, joined.