UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

No. 04-4341

---

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

versus

DANIEL DAVID GARCIA; RAMON GARCIA, JR.,

Defendants - Appellees.

---

Appeal from the United States District Court for the Middle District of North Carolina, at Durham. Frank W. Bullock, Jr., District Judge. (CR-04-86)

---

Argued: October 29, 2004          Decided: December 16, 2004

---

Before WIDENER and MOTZ, Circuit Judges, and Glen E. CONRAD, United States District Judge for the Western District of Virginia, sitting by designation.

---

Reversed by unpublished per curiam opinion.

---

**ARGUED:** Lawrence Patrick Auld, Assistant United States Attorney, Deputy Chief, Criminal Division, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellant. Steven Price Weaver, BROTHERTON, FORD, YEOMAN & WORLEY, P.L.L.C., Greensboro, North Carolina; Gregory Davis, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greensboro, North Carolina, for Appellees. **ON BRIEF:** Anna Mills Wagoner, United States

Attorney, Robert A. J. Lang, Assistant United States Attorney, Greensboro, North Carolina, for Appellant. Louis C. Allen, III, Federal Public Defender, Greensboro, North Carolina, for Appellee Daniel David Garcia; Robert A. Ford, BROTHERTON, FORD, YEOMAN & WORLEY, P.L.L.C., Greensboro, North Carolina, for Appellee Ramon Garcia, Jr.

———————————

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

A federal grand jury charged Daniel David Garcia and Ramon Garcia, Jr. with a Hobbs Act robbery in violation of 18 U.S.C. § 1951 (2000), carrying and using a firearm during the robbery in violation of 18 U.S.C. § 924(c)(1)(A)(2000), and possessing a firearm as convicted felons in violation of 18 U.S.C. § 922(g)(1)(2000). Prior to trial, the district court granted defendants' motion to suppress evidence seized from them when Corporal Mike J. Riazzi stopped their vehicle shortly after the robbery. The Government appeals. For the reasons that follow, we reverse.

I.

While on patrol at 4:25 a.m. October 2, 2003, Riazzi, a twelve-year police department veteran (with a decade of patrol experience), heard a police radio broadcast stating that a Quality Mart on Peace Haven Road in Winston-Salem, North Carolina, had just been robbed. The broadcast described the suspect as an armed, white man wearing a black hooded sweatshirt last seen running north from the convenience store. Riazzi, who was familiar with the upper-middle class neighborhood along Peace Haven Road, thought the robber might flee by car through the intersection of Robinhood Road and Peace Haven Road, so he drove there.

Peace Haven Road is a through street and numerous streets intersect it along the 3.7 miles between the Quality Mart and Robinhood Road.  But because of the early hour, very few cars were on the road.  Soon after arriving at the intersection, Riazzi saw a red vehicle pass through it.  He followed the red car for eight blocks to see if the driver would commit a traffic violation.  When the driver did so, Riazzi turned on his blue lights and pulled up beside the car.  Based on the driver's demeanor when told of the robbery and Riazzi's calculation that the suspect could not have reached the intersection so quickly, Riazzi ruled the driver out as a suspect.

Upon his return to the intersection, Riazzi observed a "beat-up" car -- occupied by the defendants -- drive north on Peace Haven, stop at a red light, and turn right onto Robinhood.  About four minutes had passed since the radio broadcast.  Riazzi followed the car for eight miles but did not see the driver commit any traffic violations.  The car took an indirect route to a highway to Greensboro.  When the car entered a lighted area on the highway, Riazzi pulled alongside it and saw that it was occupied by two men with light complexions; he could not tell if they were white.  He noticed that the driver was wearing a black sweater.  The driver neither made eye contact with him nor looked at him, even though, as Riazzi remembers it, no other cars were on the road.  Riazzi pulled the defendants over and, after asking some questions,

-4-

frisked the defendants and the car, finding a pistol, a black hooded sweatshirt, and a mask similar to those used in the robbery.

II.

In ruling on the defendants' motion to suppress this evidence, the district court carefully considered Riazzi's testimony. The court noted that Riazzi had relied on several factors as justification for the stop: the car arrived at an intersection that someone escaping the robbery might pass through; the car was beat-up and, therefore, out of place in the well-to-do neighborhood; the driver took an indirect path to Route 421; the driver wore a black sweater; both occupants of the car had light complexions; and the driver did not look at or make eye contact with Riazzi when the officer pulled up alongside the car.

The district court concluded that these factors did not provide "an articulable suspicion for the officer to pull the driver over for an investigatory stop." The court reasoned that because two dozen streets intersect Peace Haven in the 3.7 miles between the Quality Mart and Robinhood Road, the presence of the defendants' car at the Robinhood/Peace Haven intersection did not mean it came from the Quality Mart. The court further held that neither the condition of the car nor the circuitous route it took to the highway proved anything. And the court noted that although the driver fit the description of the suspect in that he had a

light complexion and wore a black sweater, the police broadcast did not mention a second man or indicate that the suspect had a car -- the suspect had last been seen on foot. The district court concluded that although this was a "close case," the stop was not based on reasonable suspicion, but only a good hunch.

III.

We agree with the district court that this is a very close case.

The Supreme Court has held that when a police officer possesses a reasonable, articulable suspicion that criminal activity "may be afoot" the Fourth Amendment permits a brief investigative stop of a vehicle, without probable cause of criminal activity. Terry v. Ohio, 392 U.S. 1, 30 (1968). Reviewing courts "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." United States v. Arvizu, 534 U.S. 266, 273 (2002) (citation omitted). This means that courts cannot engage "in the sort of 'divide-and-conquer analysis' that treats each action by a defendant in isolation, finds each of them to be possibly innocent, and thus picks apart an officer's reasonable assessments." United States v. Perkins, 363 F.3d 317, 327 (4th Cir. 2004) (citing Arvizu, 534 U.S. at 274-75).

Given these generous standards of review and the district court's failure to consider the effect of one critical fact in assessing the totality of the circumstances, we must reverse its grant of the suppression motion.

The district court examined the relevant evidence with commendable care except for its failure to give due weight to one important factor: the early morning hour. See Wayne R. LaFave, Search and Seizure § 9.4(g) at 206-07 (3d ed. 1996). While the high volume of cars on the road at 4:30 p.m. render it somewhat unlikely that a car at the intersection originated at the Quality Mart, the few cars on the road at 4:30 a.m. significantly increase that probability. Similarly, while it may not be unusual for a driver not to acknowledge a marked police car driving next to him on a highway at 4:30 p.m. during rush hour, it may seem highly unusual for a driver to fail to acknowledge a marked police car driving right next to him on a highway at 4:30 a.m. when few, if any, other cars are on the road, and particularly when, as here, the police car had followed the driver for some time. See Arvizu, 534 U.S. at 275-76 ("We think it quite reasonable that a driver's slowing down, stiffening of posture, and failure to acknowledge a sighted law enforcement officer might well be unremarkable in one instance (such as a busy San Francisco highway) while quite unusual in another (such as a remote portion of rural southeastern Arizona).").

No case is identical to that at hand.  But we, and other courts, have upheld the reasonableness of investigatory stops in similar circumstances.  See, e.g., United States v. Hurst, 228 F.3d 751, 757 (6th Cir. 2000); United States v. Jones, 187 F.3d 210, 216-17 (1st Cir. 1999); United States v. Colclough, 549 F.2d 937, 940 (4th Cir. 1977).  We must conclude that the stop here was also reasonable, though an even closer case than some of those cited above, and withstands constitutional scrutiny.

IV.

For the reasons set forth above, the judgment of the district court is

REVERSED.