UNITED STATES of America, Plaintiff-Appellee,

v.

Alberto PEREZ–MARTINEZ, Defendant-Appellant.

No. 74–2720.

United States Court of Appeals, Ninth Circuit.

Nov. 7, 1975.

Carl E. Stewart (argued), Newport Beach, Cal., for defendant-appellant.

Richard A. Stilz, Asst. U. S. Atty. (argued), Los Angeles, Cal., for plaintiff-appellee.

## OPINION

Before CHAMBERS, TRASK and KENNEDY, Circuit Judges.

TRASK, Circuit Judge:

Appellant Alberto Perez-Martinez was found guilty in a jury trial of a charge of conspiracy to receive, conceal, transport, and sell large quantities of heroin from on or about August 1, 1970, to on or about May 1, 1971, in violation of 21 U.S.C. § 174 (1964), *as amended* 21 U.S.C. § 963 (1970).

Diego Pena and Roberto Cuello, charged as unindicted co-conspirators, after a grant of immunity testified to conversations and dealings with appellant, all concerned with the transportation of heroin from Los Angeles to San Francisco to supply appellant's heroin business in San Francisco. The three men on one occasion in November 1970 transported 18 ounces of heroin in a rented car from Los Angeles to Burlingame where the drug was weighed, secreted and then left by appellant with the two witnesses for sale. There was no issue raised as to the sufficiency of the evidence to support the conviction. It was little short of overwhelming.

Rather, the appellant relies for reversal upon the failure of the court to ask prospective jurors on *voir dire* certain questions submitted by appellant and the failure to exclude certain evidence. In addition, appellant complains strenuously about the court's unwarranted interference with the examination and cross-examination of witnesses which he asserts went so far as to violate his right to a fair trial, and upon unwarranted interference by the trial court in the proceedings generally.

The court conducted the examination of the jurors on *voir dire*. The appellant had submitted questions relating to possible prejudice.[1] The court repeatedly asked the jurors if each could be "absolutely" and "scrupulously" fair and objective and impartial to both sides "without any bias or prejudice whatsoever," but did not ask the specific questions requested. Principal witnesses on both sides were Cuban and the appellant was also of Cuban nationality.

---

1. "116. Will the fact that the defendant is a Cuban affect in any way your judgment in this case?

"117. Do you promise to consider only the facts and evidence in this case, and to completely disregard the defendant's race, creed and color?" C.T. at 147.

Reliance by appellant is placed upon *Aldridge v. United States*, 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054 (1931), and upon *Ham v. South Carolina*, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973). Aldridge was a black man who was convicted in the Supreme Court of the District of Columbia of murder in the first degree and sentenced to death for killing a white policeman of the District. The trial court had instructed the jury generally but without addressing the general question of bias and prejudice (except as to circumstantial evidence) and refused a specific request for a question on racial prejudice. The refusal was held to amount to reversible error. The Court also said that:

> "The right to examine jurors on the *voir dire* as to the existence of a disqualifying state of mind, has been upheld with respect to other races than the black race, and in relation to religious and other prejudices of a serious character." 283 U.S. at 313, 51 S.Ct. at 472 (Citations omitted).

It was plain however that the decision was framed by circumstances of black versus white where the issue was life or death. The decision in *Aldridge* was governed by two factors not present in the instant case. First the black defendant there was charged with murder of a white policeman, the type of case in which the question of race invariably surfaces. Second, the Court was clearly impressed by the fact that defendant was on trial for his life. *Id.* at 314, 51 S.Ct. 470.

*Ham v. South Carolina, supra,* was a review on certiorari from a conviction of possession of marijuana in violation of state law. The Supreme Court limited its examination to the question whether the refusal of the trial judge to examine jurors on *voir dire* as to prejudice against the petitioner violated his constitutional rights. Petitioner was a young black who appeared to have been well-known locally for his civil rights work in organizations such as the Southern Christian Leadership Conference and the Bi-Racial Committee of the City of Florence. He had never before been convicted of a crime and his basic defense was that local authorities were out to "get him" because of his civil rights activities and had framed him on the drug charge. The questions requested by counsel concerned the defendant's race and possible prejudice against blacks. They were not asked. The trial judge, instead, asked three general questions specified by the South Carolina statutes.[2]

In its reversal of the judgment of the state court, the Supreme Court noted that one of the principal purposes of the fourteenth amendment was to prohibit states from invidiously discriminating on the basis of race. Therefore, where under state law trial judges were authorized to conduct *voir dire* examinations, due process limitations not only of historical genesis but of fairness, required "that under the facts shown by this record the petitioner be permitted to have the jurors interrogated on the issue of racial bias." 409 U.S. at 527, 93 S.Ct. at 850. (Citations omitted).

Were this a case of a member of the black race with circumstances which might arguably indicate a background of racial problems, *Ham* would certainly control.[3] While we do not read *Ham*

---

**2.** " '1. Have you formed or expressed any opinion as to the guilt or innocence of that defendant, Gene Ham?

" '2. Are you conscious of any bias or prejudice for or against him?

" '3. Can you give the State and defendant a fair and impartial trial?' " 409 U.S. at 526, n. 3, 93 S.Ct. at 850.

**3.** In the most recent case considering the question, *Ross v. Ristaino*, 508 F.2d 754, 756 (1st Cir. 1974), *cert. granted*, (1975) 421 U.S. 987, 95 S.Ct. 1989, 44 L.Ed.2d 476 the crime was of violence by a black against a white security officer. The questions presented upon grant of certiorari were stated to be (1) Should *Ham* be applied retrospectively? (2) Does *Ham* apply to facts of that case? (3) Does failure to follow *Ham* constitute constitutional error requiring reversal?

narrowly, we believe it significant that the "facts shown by this record" in *Ham* were meaningful to the Court. Specifically, the Court was concerned that the defendant was a black and that it was clear that his defense would involve raising questions with racial implications.

In the case before us there is no showing of a background of racial conflict or overtones of racial problems. The petitioner was Cuban by nationality. At the time of the *voir dire* examination, there was no indication that his nationality would in any manner affect the forthcoming trial. There is no reference in the record which we have found which refers to his race. He could conceivably have been Caucasian.[4] He could also be of the Mongolian, Ethiopian, black or yellow race, or a mixture. Neither attorney referred to either the race or the nationality of the accused or to the race or nationality of any of the witnesses in their opening statements. In the entire record of the examination, cross-examination and redirect examination of the accused who took the stand there was no reference to race or racial problems. There was also no reference to his nationality.[5] He was asked how long he had been in the United States and responded "going to be fourteen years." He was not asked from whence he came or his citizenship status. Likewise, the circumstances of the charged offense connote no racial or national overtones. Dealers and possessors of heroin are not identifiable with any race, creed or national origin.

We conclude that this case is not governed by either *Aldridge* or *Ham*. Neither is it within the dicta of *Aldridge*, 283 U.S. at 313, 51 S.Ct. at 472, to the effect that there is a right to examine prospective jurors on *voir dire* "in relation to religious and other prejudices of a serious character." There was simply no advance indication that such prejudices might arise, nor any proof that they did in fact arise. That being so, we adhere to the general rule in this circuit that the decision whether to allow specific *voir dire* questioning is one within the discretion of the trial judge. As we said recently in *United States v. Heck*, 499 F.2d 778, 790 (9th Cir.), *cert. denied*, 419 U.S. 1088, 95 S.Ct. 677, 42 L.Ed.2d 680 (1974):

> "It is well established that the scope of the *voir dire* examination and the procedures to be utilized therein are matters within the sound discretion of the trial judge, and will not be disturbed on appeal unless the procedures used or the questions propounded are so unreasonable or devoid of the constitutional purpose as to constitute an abuse of that discretion. *Haslam v. United States*, 431 F.2d 362, 364 (9th Cir. 1970); *Rodgers v. United States*, 402 F.2d 830 (9th Cir. 1968); *Amsler v. United States*, 381 F.2d 37 (9th Cir. 1967)."

*See also* our decision in *United States v. Walker*, 491 F.2d 236, 239 (9th Cir.), *cert. denied*, 416 U.S. 990, 94 S.Ct. 2399, 40 L.Ed.2d 768 (1974).

---

4. "[Although] race, nation and people, even in technical use are commonly differentiated, they are often used popularly and interchangeably to designate one of a member of great divisions of mankind, each made up of an aggregate of persons who are thought of, or think of themselves, as comprising a distinct unit . . . . Race is anthropological and ethnological in force, usu[ally] implying a distinct physical type with certain unchanging characteristics, as a particular color of skin or shape of skull [the Caucasian *race*] [the Malay *race*] [the Ethiopian *race*] . . . ." Webster's International Dictionary 1961 ed. at 1870.

5. So also, in the examination, cross-examination and redirect examination of Candida Perez, appellant's wife, there was no reference to race, nationality or country of origin. Although Mrs. Perez testified with the aid of an interpreter, the first reference and one of few to the "Cuban community" in which Mr. Perez lived, was elicited by counsel for defendant. R.T. at 1190. The government did not pursue the inquiry.

Appellant argues also that the court erred in admitting into evidence over objection the fact that appellant posted the deposit for the bail bond of an unindicted conspirator, one Pena. The contention is that such evidence, although admitted on the theory of its relevance to the conspiracy, must be excluded because it results in "an impermissible restriction upon the constitutional and statutory right to bail." No authority directly relevant to the contention was submitted and we know of none. As a matter of first impression we find the argument, upon principle, of little merit.

The remainder of the argument of appellant is directed to the asserted misconduct of the trial judge and the government in handling of witnesses and counsel. It is contended that the judge was ill-tempered and critical, and obviously hostile toward appellant and appellant's witnesses, an attitude not displayed toward government counsel or government witnesses. The record simply belies such a charge. The court did attempt to move along a lengthy trial when it threatened to stall upon trivialities. Perhaps by tone of voice or gesture there was impatience or even some irascibility shown. We would not approve or encourage such conduct, but there was no indication here that it exceeded any bounds of legitimate trial conduct and criticism was certainly directed at counsel on both sides evenhandedly. We find the contentions to be without justification.

The judgment is affirmed.