Michael R. Levine (argued), Barrett S. Litt (argued), Joe Reichmann (argued), Los Angeles, Cal., for defendants-appellants.

Darrell W. MacIntyre (argued), Los Angeles, Cal., for plaintiff-appellee.

Before ELY and ANDERSON, Circuit Judges, and SOLOMON,* District Judge.

PER CURIAM:

## I. FACTS

The three appellants were convicted of two separate bank robberies by a jury. 18 U.S.C. § 2113(a)(d). Appellant Clabaugh was also subsequently convicted of a third count of bank robbery in a court trial based on stipulated facts. Clabaugh was sentenced to concurrent 25-year terms on each count. Appellant Colomb received concurrent 25-year sentences, and appellant McGeorge received concurrent 20-year sentences on the same two counts. Timely notices of appeal followed.

The most substantial question on appeal is whether the detention which led to appellants' arrest and the seizure of critical evidence was lawful. The jury instructions on reasonable doubt, the limitations on voir dire questioning, and the admission of certain other evidence are also challenged.

## II. DETENTION

▮▮ Appellants and a fourth man were "stopped" in their car by two Los Angeles narcotics officers on January 12, 1977. By the time the officers reached appellants' automobile, they had sighted, in plain view, a pistol on the car seat which gave the officers probable cause to arrest. Other inculpatory evidence was found in plain view and in a search incident to arrest.

The day before the stop and arrest, the same two officers spotted the foursome in the same vehicle in a parking lot near San Fernando Road. The time was 4:00 p. m. One of the policemen, Officer Birney, recognized the fourth man, Coughlin, whom he had previously arrested twice and knew as a narcotics user and convicted burglar. The officers followed the car as it slowly traveled down San Fernando Road. Although the officers were in plain clothes and driving an unmarked car, Coughlin and appellant McGeorge waved to them. The surveillance lasted only briefly that day.

At 3:30 p. m. the next day, the officers saw the vehicle traveling south on San Fernando Road. Again, they followed the car, this time without being recognized. Appellants' vehicle traveled slowly (20–25 m. p. h.) and slowed further at each motel passed. Appellants looked into each motel office and, in the officer's judgment, "appear[ed] to case same." After about ten minutes, appellants pulled into one motel driveway, and appellant McGeorge entered the office. The officers pulled into the driveway; the other vehicle then slowly pulled out into the street and parked on the shoulder of the road. The officers followed, stopped behind them, flashed a red spotlight, and approached the vehicle. The gun was then spotted.

A few minutes prior to sighting the vehicle on the second day, the officers were informed three men had robbed a savings and loan association five miles away. Although the appellants proved to be the same robbers, the stop was based on the officers' suspicion that a motel robbery was occurring. The officers knew that Coughlin lived in the "Saugas, Newhall area" and

---

* The Honorable Gus J. Solomon, Senior U. S. District Judge for the District of Oregon, sitting by designation.

that San Fernando Road was an area of frequent burglaries and narcotics trafficking.

The trial judge found the stop was proper under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and denied the motion to suppress. Prior to the adoption of the Federal Rules of Evidence, the law of this circuit required a federal court to judge the legality of a stop or warrantless arrest by state officers under both state and federal standards. *United States v. Solomon,* 528 F.2d 88, 90 (9th Cir. 1975); *United States v. Lovenguth,* 514 F.2d 96, 98 (9th Cir. 1975); *United States v. Walling,* 486 F.2d 229, 235 (9th Cir. 1973), *cert. denied,* 415 U.S. 923, 94 S.Ct. 1427, 39 L.Ed.2d 479 (1974); *United States v. Fisch,* 474 F.2d 1071, 1075 (9th Cir.), *cert. denied,* 412 U.S. 921, 93 S.Ct. 2742, 37 L.Ed.2d 148 (1973); *Warston v. United States,* 400 F.2d 25, 27 (9th Cir. 1968), *cert. denied,* 396 U.S. 892, 90 S.Ct. 184, 24 L.Ed.2d 166 (1969). These cases hold that if either standard is violated, any evidence seized as a result must be suppressed. The effect, if any, of the Federal Rules of Evidence on this rule is uncertain.[1] Further, California courts in evaluating arrests have not always been clear whether their decisions are based on federal law or a separate state law of arrest. However, we need not discuss these questions, for we hold that under both federal and state standards, the motion to suppress was properly denied. In this case the analysis under federal and state standards is essentially identical: recent California cases have followed the *Terry* criteria for judging the legality of brief detentions. *People v. Flores,* 115 Cal.Rptr. 225, 524 P.2d 353 (1974).

The facts here are similar to *Terry,* except that Terry and his companion were on foot. *Terry* emphasized that courts must be flexible in judging the legality of on-the-street encounters according to the particular conduct involved and the severity of the intrusion. *Id.* 392 U.S. at 19–20, 88 S.Ct. 1868. There, the detention included a frisk, a more abrupt and embarrassing intrusion, though the implication of criminality was also less equivocal.

The focus in *Terry* is on the legality of the frisk, but the ultimate question is the same as here: Was the interference reasonable? The interference must be based on specific, articulable facts which justify the intrusion. *Id.* at 21, 88 S.Ct. 1868. Specific, articulable facts were shown below. The intrusion was slight, and the danger serious and immediate. We affirm the trial court's ruling that the unobtrusive detention here was justified. *See People v. Gale,* 108 Cal. Rptr. 852, 511 P.2d 1204 (1973).

### III. THE INSTRUCTIONS ON REASONABLE DOUBT

 Appellants attack the instructions on many fronts. The court did eschew the preferred "hesitate to act" formulation in favor of the now disapproved "willingness to act" formulation in explaining reasonable doubt.[2] But this is not reversible error if the instructions, as a whole, fairly and accurately convey the meaning of reasonable doubt. *United States v. Robinson,* 546 F.2d 309, 313–14 (9th Cir. 1976), *cert. denied,* 430 U.S. 918, 97 S.Ct. 1333, 51 L.Ed.2d 596 (1977). After examining them carefully, we find the instructions do fairly and accurately convey the intended meaning.

---

1. The admissibility of evidence in federal trials conducted after July 1, 1975, the effective date of the Federal Rules, see Pub.L. 93–595, 88 Stat. 1926, is primarily governed by Rule 402, which provides:

 All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.

2. The instructions also refer to the "strong probabilities of the case." References to "probabilities" are disapproved and must be avoided. *See United States v. Clay,* 476 F.2d 1211, 1215 (9th Cir. 1973). By equating reasonable doubt with moral certainty, however, the instructions negated the inference that probability of guilt is sufficient to convict.

 We were advised at oral argument by the Assistant United States Attorney that all judges of the Central District of California have now abandoned the use of this disapproved instruction.

## IV. VOIR DIRE

During voir dire, two jurors indicated possible sources of bias, but said they could act impartially. The court refused to ask more. Voir dire procedures constitute error only when they are so unreasonable or devoid of constitutional purpose as to be an abuse of discretion. *United States v. Heck,* 499 F.2d 778 (9th Cir. 1974). The decision whether to ask specific questions is also committed to the trial court's discretion. *United States v. Perez-Martinez,* 525 F.2d 365 (9th Cir. 1975).

In *Silverthorne v. United States,* 400 F.2d 627 (9th Cir. 1968), this court held that merely obtaining subjective assurances of impartiality was insufficient to determine if bias existed. But the issue is when does a possibility of bias become sufficiently definite so that further inquiry is necessary. In *Silverthorne,* thirty percent of the prospective jurors had already formed an opinion on the defendant's guilt. Here, one juror had been a project architect four years earlier for the corporate headquarters of the loan association robbed. He had no financial interest in the corporation, but did know the corporate officers fairly well. The other juror had been employed by the Los Angeles Police Department as a radio operator for 18 years. The cases cited by appellants all show a more substantial possibility of bias. *E. g., United States v. Nell,* 526 F.2d 1223 (5th Cir. 1976) (one juror disliked unions and never said he could be impartial; the other juror had quarrelled with the union involved in the trial).[3]

Consequently, we think the trial judge properly exercised his discretion. It is unlikely appellants were prejudiced by his decision to limit the voir dire questions.

## V. THE RENTAL AGREEMENT AND AIRLINE TICKETS

Also assigned as error is the admission of two airline tickets and an automobile rental agreement. The tickets were found inside appellants' automobile and the rental agreement in appellant Clabaugh's wallet. Each was sufficiently identified by the arresting officer.

The tickets are merely the means of obtaining passage on a particular flight; they do not assert who bought them, who in fact used them, or anything else prejudicial to defendants. Insofar as they give appellants McGeorge and Clabaugh the right to take a flight, they are verbal acts. Inasmuch as they were discovered in appellants' automobile, they are reliable evidence from which the jury could infer the trip was made on the specified date. Hence, they are admissible. *Relerford v. United States,* 309 F.2d 706 (9th Cir. 1962). Similar reasoning applies to the rental agreement.

We have examined the other issues raised by each of the defendants and find them to be without merit.

All convictions are AFFIRMED.

---

3. In *United States v. Allsup,* 566 F.2d 68 (9th Cir. 1977), the court held it was reversible error not to excuse two jurors who worked for the bank the defendant allegedly robbed. Bias was inferred, despite the jurors' untested claim of impartiality, because their employment subjected them to the same threat of violence. The court specified, however, that ordinarily "potential bias is extremely attenuated, or nonexistent, when the only connection between the victim and the prospective juror is that of employer and employee . . . " *Id.* at 71 n. 1.