**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Robert Edward FIELD,**
**Defendant-Appellant.**

**No. 79–1533.**

United States Court of Appeals,
Ninth Circuit.

Submitted Feb. 5, 1980.

Decided Aug. 1, 1980.

Schroeder, Circuit Judge, filed opinion concurring in part and dissenting in part.

Rudolph A. Diaz, Los Angeles, Cal., for defendant-appellant.

Richard G. Drooyan, Asst. U.S. Atty., Los Angeles, Cal., argued for plaintiff-appellee; Andrea Sheridan Ordin, U.S. Atty., Los Angeles, Cal., on brief.

Before WALLACE and SCHROEDER, Circuit Judges, and HANSON,* District Judge.

* Honorable William C. Hanson, United States District Judge, Southern District of Iowa, sitting by designation.

WALLACE, Circuit Judge:

Field was convicted of armed bank robbery pursuant to 18 U.S.C. § 2113(a), (d). On appeal he claims that certain eye witness evidence admitted by the district court violated his right to due process of law, and that certain rulings by the district court were erroneous. We agree with Field's due process claim and reverse the conviction.

I

On the morning of March 6, 1979, two men robbed a Barclay's Bank located in Woodland Hills, California. During the robbery, which lasted one and one-half to two minutes, the shorter of the two robbers brandished a pistol and took money from three of the six tellers then on duty, while his companion took money from the remaining three tellers. After taking a total of $11,470, the robbers left the bank through a rear door and escaped in a dark-colored Toronado automobile.

During trial two months later, two tellers and one customer of the bank identified Field as the shorter robber. In addition, all counsel stipulated that the car in which the robbers escaped, the license number of which was recorded by an observer outside the bank, was registered to Field's wife.

Field introduced an alibi defense. He claimed that he and his daughter spent part of the morning of March 6 at a friend's house and the remainder of the morning at a local restaurant. He also produced testimony that codefendant Harris, who pled guilty to the bank robbery charge, had access to the car used to escape from the crime. The jury deliberated for nearly two and one-half days before finding Field guilty.

The most substantial question in this appeal is whether the in-court identifications by the two tellers and the bank customer were so tainted by pretrial occurrences as to deny Field's right to due process of law.

The district judge's limitation on voir dire questioning, his ruling on the admissibility of prior convictions, his refusal to give certain requested jury instructions, and his refusal to grant a mistrial are also challenged. We will consider each of these contentions in turn, setting forth relevant facts as necessary.

## II

Joan Jacobson, a teller on duty at the bank during the robbery, identified Field in court as the man who had robbed her. Jacobson testified that she recognized Field because she had stared at the shorter robber as he stood two to three feet away from her for a full minute during the robbery. Cross-examination established that eight days after the robbery Jacobson had been unable to identify the robber from a photo spread of six individuals, one of whom was Field. One week before trial Jacobson was present when an FBI agent, while showing the same photo spread to other tellers at the bank, identified the picture of Field as one of the individuals arrested for the crime. Just prior to commencement of the trial Jacobson saw Field handcuffed, in the hallway outside the courtroom.

Louise Guerin, the second teller to identify Field at trial, testified that during the robbery she saw the shorter robber twice, for a few seconds, from a distance of about 20 feet. When shown the six-picture photo spread by the FBI agent, Guerin was unable to identify positively the robber, but selected two photos, including Field's, as most closely resembling him. After doing so, Guerin, like Jacobson, was present when the FBI agent identified Field's photo as one of the apprehended suspects. She also saw Field handcuffed, waiting outside the courtroom prior to trial.

Louis Kotzen, the only customer in Barclay's Bank the morning of the crime, identified Field as the shorter robber whom he had observed from 25 feet during the one to two minutes of the robbery. Two weeks before trial the FBI agent interviewed Kotzen at Kotzen's office and showed him the same photo spread shown to the tellers.

When Kotzen selected a photo other than Field's the FBI agent told him that his selection was wrong. Kotzen then selected Field's photo and the agent confirmed the selection. Kotzen also admitted that prior to testifying he saw Field through the courtroom doors and supposed him to be the suspect.

Field contends that the in-court identifications by these three witnesses, the only positive identifications produced at trial, were impermissibly tainted by the suggestive actions of the FBI agent during the pretrial photo spread and by pretrial views of Field in the courthouse. He argues that admission of such evidence therefore violated his right to due process.

### A.

■ Suggestive pretrial photo spread procedures may taint in-court identifications sufficient to deny the accused due process of law. In reviewing pretrial procedures for such taint, the Supreme Court has instructed "that each case must be considered on its own facts, and that convictions based on eye witness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). We have followed this articulation of the due process standard in numerous cases. *E. g., Mata v. Sumner*, 611 F.2d 754, 758 (9th Cir. 1979); *United States v. Cook*, 608 F.2d 1175, 1178 (9th Cir. 1979) (en banc), *cert. denied*, 444 U.S. 1034, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980); *United States v. Crawford*, 576 F.2d 794, 797 (9th Cir.), *cert. denied*, 439 U.S. 851, 99 S.Ct. 157, 58 L.Ed.2d 155 (1978); *United States v. Peele*, 574 F.2d 489, 490 (9th Cir. 1978); *United States v. Valdivia*, 492 F.2d 199, 210 (9th Cir.), *cert. dismissed*, 414 U.S. 801, 94 S.Ct. 16, 38 L.Ed.2d 38 (1973). In doing so once again, our review must focus not only on the particular pretrial procedure in question, but also on the

totality of surrounding circumstances. *Manson v. Brathwaite*, 432 U.S. 98, 104, 97 S.Ct. 2243, 2247, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 196, 199, 93 S.Ct. 375, 380, 382, 34 L.Ed.2d 401 (1972); *Simmons v. United States, supra*, 390 U.S. at 383, 88 S.Ct. at 970; *United States v. Cook, supra*, 608 F.2d at 1178; *United States v. Crawford, supra*, 576 F.2d at 797.

 Our review of the district court's admission of the in-court identifications of Field focuses exclusively on their reliability. Since "[i]t is the likelihood of misidentification which violates a defendant's right to due process," *Neil v. Biggers, supra*, 409 U.S. at 198, 93 S.Ct. at 381–82, *quoted in United States v. Barron*, 575 F.2d 752, 754 (9th Cir. 1978), even "a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability." *Manson v. Brathwaite, supra*, 432 U.S. at 106, 97 S.Ct. at 2249. Thus, "reliability is the linchpin in determining the admissibility of identification testimony . . . ." *Id.* at 114, 97 S.Ct. at 2253.

While our determination of the reliability of identification testimony must be made from the totality of the circumstances, the Supreme Court has stated that our assessment should include five factors:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Neil v. Biggers, supra*, 409 U.S. at 199–200, 93 S.Ct. at 382. Having examined the identification evidence for these five indicia of reliability, a reviewing court is instructed to weigh their existence and extent "[a]gainst . . . the corrupting effect of the suggestive identification itself." *Manson v. Brathwaite, supra*, 432 U.S. at 114, 97 S.Ct. at 2253. By doing so, the court may judge whether the identification was the product of observations at the time of the crime or impressions made during the suggestive pretrial photographic identification process.

Several of our cases have followed the five-factor analysis (hereinafter *Biggers* analysis) set forth by the Supreme Court. *Green v. Loggins*, 614 F.2d 219, 224 (9th Cir. 1980); *Washington v. Cupp*, 586 F.2d 134, 136 (9th Cir. 1978), *cert. denied*, 441 U.S. 909, 99 S.Ct. 2003, 60 L.Ed.2d 379 (1979); *United States v. Barron, supra*, 575 F.2d at 754. At the same time, however, several other of our cases have adopted a slightly different four-factor analysis pursuant to which the court considers

> the witness's opportunity to observe the perpetrator during the commission of the crime, the similarity between the witness's prior description of the criminal and the characteristics of the defendant identified at trial, the presence and influence of other witnesses at the time of the prior identification, and the conduct on the part of the government agents tending to focus the witness's attention on the defendant.

*United States v. Crawford, supra*, 576 F.2d at 797 (footnote omitted). This formulation of the reliability test, which apparently originated with *Parker v. Swenson*, 332 F.Supp. 1225, 1230–31 (E.D.Mo.1971) (hereinafter *Parker* analysis), was initially utilized by our court in reviewing the admission of in-court identifications preceded by suggestive pretrial procedures. *United States v. Baxter*, 492 F.2d 150, 170–73 (9th Cir. 1973), *cert. denied*, 416 U.S. 940, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974). Subsequent cases of ours suggested that such in-court identifications should always be judged by the *Parker* analysis, rather than the *Biggers* analysis, because the *Biggers* analysis was developed in cases judging the admissibility of tainted out-of-court identifications and was "not precisely applicable." *United States v. Crawford, supra*, 576 F.2d at 797 n. 1. Whether we can still claim such a distinction is questionable.

It is true that *Biggers* and its progeny, *Manson v. Brathwaite, supra*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140, judged the admissibility of out-of-court identifications tainted by pretrial procedures. Moreover,

consistent with the suggestion in *Crawford*, several of our cases have applied the *Parker* analysis when reviewing the admission of in-court identifications. *E. g., Mata v. Sumner, supra*, 611 F.2d at 757–58; *United States v. Valdivia, supra*, 492 F.2d at 208–10. That pattern, however, has not been strictly followed. We have decided several challenges to in-court identifications by use of the *Biggers* analysis. *Green v. Loggins, supra*, 614 F.2d at 224–25; *Washington v. Cupp, supra*, 586 F.2d at 136–37; *United States v. Barron, supra*, 575 F.2d at 754–55. If there is a conflict among our prior cases, we must, of course, follow the teachings of the Supreme Court.

That the *Biggers* analysis is logically applied to the admission of both in-court and out-of-court identifications is amply demonstrated by the Court's reliance in *Biggers* upon both out-of-court identification cases, 409 U.S. at 196, 93 S.Ct. at 380 (relying upon *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967)), and in-court identification cases, 409 U.S. at 197, 93 S.Ct. at 381 (relying upon *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), and *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1969)). Moreover, the Court in *Manson* expressly rejected the argument that two separate due process standards should exist for in-court and out-of-court identifications. *Manson v. Brathwaite, supra*, 432 U.S. at 106 n. 9, 97 S.Ct. at 2249 n. 9. When it is so clear that the same reliability standard governs both forms of identification evidence, there does not appear to be any sound reason for maintaining separate formulas for applying that standard. *See Washington v. Cupp*, 586 F.2d 134, 136 (9th Cir. 1978), *cert. denied*, 441 U.S. 909, 99 S.Ct. 2003, 60 L.Ed.2d 379 (1979). Thus, the *Biggers* analysis applies in this case of in-court identification.

In applying that analysis, the reliability of identification evidence is tested by weighing the indicia of reliability against the corrupting tendencies of the suggestive pretrial identification procedure, that is, against the indicia of improper influence. *Manson v. Brathwaite, supra*, 432 U.S. at 114, 97 S.Ct. at 2253. The five suggested factors of *Biggers*, which include the first two factors of the *Parker* analysis,[1] are indicia of reliability. They "all relate to the quality of a witness' personal observations and remembrances." *Green v. Loggins, supra*, 614 F.2d at 225. In contrast, the last two factors of the *Parker* analysis, the presence and influence of other witnesses at the pretrial identification procedure and the conduct of government agents tending to focus the witness' attention on the defendant, are indicia of improper influence.

The Supreme Court has warned against pretrial identification procedures in "which the photograph of a single . . . individual recurs or is in some way emphasized," or by which "the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime." *Simmons v. United States, supra*, 390 U.S. at 383, 88 S.Ct. at 971 (footnotes omitted). Thus, all factors in the *Biggers* and *Parker* analyses may assist in assessing the reliability of identification evidence. *Biggers* does not mandate the application of any test in a vacuum. Indeed, *Biggers* requires examination of the totality of the circumstances which "include" the five factors. The last two suggested *Parker* factors may be of assistance in carrying out the mandate assigned to us by *Manson* to weigh the "corrupting effect" of the procedure challenged against the *Biggers* "indicators of [a witness'] ability to make an accurate identification." 432 U.S. at

---

1. Consideration of the first two *Parker* factors, "the length of time and the conditions under which a witness was able to observe the perpetrator during the commission of the crime" and "the similarity of the description given by a witness immediately after the crime to the physical characteristics of the individual he subsequently identifies," *Parker v. Swenson*, 332 F.Supp. 1225, 1230–31 (E.D.Mo.1971), are in large measure the same as consideration of the first three factors of *Biggers*: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, [and] the accuracy of the witness' prior description of the criminal." *Neil v. Biggers, supra*, 409 U.S. at 199, 93 S.Ct. at 382.

116, 97 S.Ct. at 2254. Of course, not all factors will be applicable in every case.

When balancing the *Biggers* factors against the last two factors in *Parker*, it is critical that the last *Parker* factor be analyzed within the framework of a reliability determination. That we test "the conduct on the part of government agents tending to focus the witness's attention on the defendant," *United States v. Crawford, supra*, 576 F.2d at 797, should not be read as suggesting that our primary concern is the prohibition of reprehensible government conduct. On the contrary, our primary concern when applying this factor is the reliability of the identification evidence. We are seeking to determine what suggestive influences were brought to bear upon the witnesses during the pretrial procedures. We recently commented on the existence of improper police conduct in pretrial identification procedures:

> [T]he deterrence of such conduct is not the primary purpose behind judicial review of tainted identification testimony. Rather, a court reviews a challenged in-court identification essentially to determine whether the witness' testimony retains sufficient indicia of reliability.

*Green v. Loggins*, 614 F.2d at 222. "Hence, the focus is on the reliability of the witnesses' identification rather than on the flaws in the pretrial identification procedures." *United States v. Barron*, 575 F.2d 752, 754 (9th Cir. 1978).

To be sure, deterrence of improper police conduct is a worthy goal. But when improper police conduct, directed only at a witness, does not taint the reliability of that witness' identification evidence, the defendant has nothing of which to complain. Probative evidence should not be kept from a jury at the behest of a defendant whose rights are unaffected by the police conduct. The Supreme Court has determined that deterrence of such improper conduct may

be fully effectuated by appellate review that focuses on the reliability of identification evidence. *Manson v. Brathwaite, supra*, 432 U.S. at 112, 97 S.Ct. at 2252. Thus, we need not consider the reprehensibility of police conduct in these cases except as it bears upon the reliability of the challenged identification.

### B.

■ At the conclusion of the government's case, Field made a motion, based upon the alleged unconstitutional taint of the eye witnesses' identification, to dismiss the count of the indictment upon which he was being tried. The motion was summarily denied. We must, therefore, assess the reliability of the in-court identifications by analyzing the witnesses' testimony in light of the factors set forth above. In doing so, we conclude that the admission of the testimony of at least two of the witnesses violated Field's right to due process of law. An examination of the totality of the surrounding circumstances reveals that "the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States, supra*, 390 U.S. at 384, 88 S.Ct. at 971.

When the identification by Guerin is examined for the indicia of reliability set forth in *Biggers*, her testimony appears somewhat unreliable. Guerin viewed the robber twice, once as he entered the bank and once as he approached her, but both times for only a few seconds and from a distance of 20 feet. After the robbery, Guerin described the robber as dark complexioned and Hispanic, not black or white. At trial she admitted that Field looked lighter complexioned than the man who had robbed her. Guerin did not positively identify Field from the pretrial photo spread.[2]

---

2. The government contends that in this case we must consider the certainty of the witnesses' in-court identification rather than the certainty of their pretrial identification. The cases relied upon by the government disagree. In *United States v. Barron, supra*, we concluded that a

reviewing court must consider "the witness' level of certainty *at the prior confrontation* . . . ." 575 F.2d at 754 (emphasis added). Although a witness' certainty at trial is undoubtedly significant, it is primarily a matter for the jury. The level of certainty at the

According to her testimony, she viewed the spread supposing that the robber was pictured, but was still unable to identify him with certainty. She did, however, point to two possible photographs, one of which was Field's.

▇ Other circumstances also raise questions about Guerin's identification. Guerin testified that she discussed the robbery with other witnesses throughout the two months prior to trial and in the car on the way to the courthouse. Upon arriving at the courthouse she saw Field handcuffed in the hallway, a view which, by her own admission on cross-examination, suggested to her that Field was the man who had robbed her.[3]

A key factor in our determination is the obvious result of the suggestive conduct by the FBI agent. Guerin was told by the FBI agent that the robbers had been arrested. Following her view of the photo spread, Guerin was present with Jacobson and the other tellers when the FBI agent identified Field as one of the arrested suspects. The absence of indicia of reliability of Guerin's identification convinces us that the pretrial focusing of Guerin's attention on Field, when considered in the totality of surrounding circumstances, "was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States, supra,* 390 U.S. at 384, 88 S.Ct. at 971.

Kotzen's testimony is equally unreliable. He viewed the robber at a distance of 20 to 25 feet throughout the robbery, paying greater attention to the shorter robber who was armed. Kotzen testified that the shorter robber was wearing a straw hat and sunglasses and that he was thus able to view the shorter robber's face only below the eyes. While testifying, however, Kot-

zen began to doubt his recollection that the man was wearing sunglasses. Kotzen also testified that his selection of two photographs from the photo spread, approximately one month after the robbery, was based on the fact that the prominent noses on the two individuals pictured resembled the prominent nose of the shorter robber. A post-robbery description sheet completed by Kotzen, however, contained no description of the shorter robber's nose, even though the sheet contained a space designated expressly for that purpose.

About two weeks after the robbery, but before viewing the photo spread, Kotzen was told by tellers at the bank that two suspects had been arrested. As with Guerin, the suggestive police conduct becomes critical in our analysis. When shown the photo spread and asked to identify the man he had seen in the bank, Kotzen selected a photograph other than Field's. The agent told Kotzen that his selection was wrong, and Kotzen then selected Field's photograph. The agent confirmed Kotzen's second selection as being the photograph of the suspect who had been arrested. Although Kotzen testified that his identification of Field was based upon his observations during the crime rather than the pretrial photo spread, we are again convinced, as we were with Guerin's identification, that the pretrial focusing on Field outweighs any indicia of reliability detectable in Kotzen's identification.

▇ Because the pretrial photo spread procedures utilized in this case created a very substantial likelihood of irreparable misidentification, we conclude that admission of the identification testimony of Guerin and Kotzen was error. The government concedes that if the pretrial procedures undertaken as to any one of the three witness-

---

pretrial confrontation, however, may well be probative of the reliability of a witness' subsequent in-court identification and the degree of influence had by the suggestive pretrial procedure.

3. The incidental view of Field handcuffed and awaiting trial is not sufficient, in itself, to impugn the reliability of a witness' testimony.

*United States v. Colclough,* 549 F.2d 937, 941 (4th Cir. 1977); *United States v. Massaro,* 544 F.2d 547, 550 (1st Cir. 1976), *cert. denied,* 429 U.S. 1052, 97 S.Ct. 766, 50 L.Ed.2d 769 (1977); *United States v. Hamilton,* 469 F.2d 880, 883 (9th Cir. 1972). It is, however, considered as part of the totality of surrounding circumstances examined to assess reliability.

es were unconstitutionally suggestive, the conviction must be reversed. We agree as we cannot say that any such error was harmless when we do not know which witness the jury may have believed. Accordingly, Field's conviction must be reversed.

We do not reach the question of whether the same result obtains as to Jacobson. Admittedly, the reliability of her identification is a close question. She had an excellent opportunity to view the bank robber, being only two to three feet away from him for a full minute. Moreover, Jacobson testified that she was highly attentive—that she "stared" at him throughout the minute that he stood before her. Such an opportunity to observe the criminal, coupled with such close attentiveness, would normally evince highly reliable identification testimony. However, the remaining three reliability factors detract somewhat from the trustworthiness of Jacobson's identification. Although she did not record a detailed post-robbery description of the criminal, Jacobson did state that he was of Mexican extraction. Field is not. Jacobson testified that she changed her mind about the robber being Hispanic when she saw Field in the courtroom. Jacobson also displayed no certainty of identification when she was shown the photo spread prior to trial. Although the robbery had occurred only nine days earlier, she was unable at that time to make any positive identification. Her first sure identification occurred at trial, approximately two months after the robbery.

An examination of the totality of the surrounding circumstances further detracts from the reliability of Jacobson's testimony. Jacobson, who normally wears glasses, was not wearing them at the time of the robbery. Jacobson also saw Field handcuffed prior to trial. One week after the robbery, Jacobson was told by an officer of the bank that suspects had been arrested. After her inconclusive view of the photo spread, but before her in-court identification of Field, Jacobson was in the presence of the other tellers when the FBI agent indicated that the photograph of Field represented one of the individuals arrested for robbing the bank. This highly suggestive pretrial procedure weighs heavily against the reliability of Jacobson's identification.

The balance between the factors relating to reliability and the corrupting effect of the FBI agent's conduct is close. Under these circumstances, we conclude that if this case is to be tried again it would be the better procedure to allow the district court to consider the reliability issue first in a pretrial proceeding where a more effective record can be developed and appropriate findings and conclusions made.

Because the trial court's rulings on the scope of voir dire, the admissibility of prior convictions, and the requested jury instructions will arise again should this case be retried, we will consider them briefly. We will not consider the denial of Field's motion for mistrial because it was based upon facts unique to the jury deliberation, the recurrence of which is unlikely.

### III

Before trial, Field submitted a list of 80 voir dire questions to be asked of prospective jurors. The district judge refused to ask 28 of the questions, explaining that they were already covered by questions he intended to ask. Field objects to the district judge's rejection of these questions, particularly his rejection of two questions concerning the presumption of innocence and the prospective jurors' willingness to follow that presumption.

▇▇▇▇ We have long held that the conduct of voir dire, including the decision whether to ask specific questions, rests within the sound discretion of the trial judge. *E. g., United States v. Clabaugh,* 589 F.2d 1019, 1023 (9th Cir. 1979); *United States v. Perez-Martinez,* 525 F.2d 365, 368 (9th Cir. 1975); *United States v. Heck,* 499 F.2d 778, 790 (9th Cir.), *cert. denied,* 419 U.S. 1088, 95 S.Ct. 677, 42 L.Ed.2d 680 (1974); *Haslam v. United States,* 431 F.2d 362, 364 (9th Cir. 1970), *cert. denied,* 402 U.S. 976, 91 S.Ct. 1680, 29 L.Ed.2d 142 (1971). This being so, "[a]ppellate courts will not interfere with the manner in which the trial court conducted the voir dire ex-

amination unless there has been a clear abuse of discretion." *Silverthorne v. United States*, 400 F.2d 627, 638 (9th Cir. 1968), *cert. denied*, 400 U.S. 1022, 91 S.Ct. 585, 27 L.Ed.2d 633 (1971). The district judge refused to ask only those questions which he considered duplicative. Moreover, he adequately covered the presumption of innocence by questions other than those requested by Field. We cannot say that he thereby abused his discretion.[4]

### IV

Field contests the district court's ruling that evidence of two prior criminal convictions, one for forgery and the other for receiving stolen property, were admissible for impeachment purposes if Field testified. The judge also ruled that a prior conviction for possession of heroin was not admissible for impeachment purposes.

Federal Rule of Evidence 609(a) governs the admissibility of prior convictions. It states:

General rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

This rule's reference to crimes involving "dishonesty or false statement" was legislatively intended to be, and judicially has been, limited to crimes involving deceit, untruthfulness or falsification—crimes bearing upon a defendant's propensity to testify truthfully. *United States v. Seamster*, 568 F.2d 188, 190 (10th Cir. 1978); *United States v. Ortega*, 561 F.2d 803, 806 (9th Cir. 1977); *United States v. Hayes*, 553 F.2d 824, 827 (2d Cir.), *cert. denied*, 434 U.S. 867, 98 S.Ct. 204, 54 L.Ed.2d 143 (1977). Such crimes are always admissible; rule 609(a)(2) grants no judicial discretion for their exclusion. *United States v. Ortega, supra*, 561 F.2d at 806; *United States v. Hayes, supra*, 553 F.2d at 827. Therefore, Field's prior conviction for forgery, a crime involving fraudulent falsification, was properly admissible.[5]

In ruling upon the admissibility of past convictions not involving "dishonesty or false statement," as that phrase has been interpreted by the courts, rule 609(a)(1) requires that a trial court weigh the probative value of the prior conviction against the prejudicial impact of its admission. The admissibility of such conviction is discretionary and we may review only for abuse of that discretion. *United States v. Cook, supra*, 608 F.2d at 1187 (en banc); *United States v. Hayes, supra*, 553 F.2d at 828.

It is probable that the admission of any prior conviction prejudices a defendant, and such would likely have been true of Field's prior conviction for receiving stolen property had he chosen to testify. We cannot say, however, that the district judge erred in concluding that the conviction's

4. Field relies upon *United States v. Blount*, 479 F.2d 650 (6th Cir. 1973), in arguing that it was error for the district judge to reject the suggested questions concerning the presumption of innocence. Even if we adopted *Blount*, we are not persuaded that it or any other case requires reversal where the trial judge adequately covered the presumption of innocence by questions worded differently from those suggested by the defendant.

5. Field contends that his prior forgery conviction should have been excluded under Federal Rule of Evidence 403. It states:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

This ground for exclusion of the forgery conviction was not raised in Field's motion in limine to the district court; therefore, we do not decide whether Rule 403 applies to prior crimes covered by 609(a) or, if it does, its effect.

probative value outweighed its prejudice.[6] Several factors are relevant. *See id.* First, the conviction occurred less than two years prior to Field's trial, thus being more probative of veracity than comparatively older crimes. Second, the crime of receiving stolen property suggests a lack of veracity on the part of Field, though not so clearly as do those crimes falling within rule 609(a)(2). Third, the conviction was not for a crime sufficiently similar to bank robbery to raise the spectre of "he did it before, he could do it again." Thus, the district judge may reasonably have determined that admission of the conviction would be more probative than prejudicial. We find no abuse of discretion.

## V

Field requested that the district judge give a lengthy and involved jury instruction concerning eye witness identification, commonly referred to as a *Telfaire* instruction. *See United States v. Telfaire*, 469 F.2d 552, 558–59 (D.C. Cir. 1972). The trial judge refused to do so, choosing instead to give a shorter form of eye-witness-identification instruction. Field contends that *rejection of the Telfaire* instruction in this case was error because the importance of the eye witness identifications and the lack of evidence corroborating those identifications made the shorter instructions inadequate. There is no need to depart from our established rule that the giving of jury instructions is discretionary, and that trial courts need not give the *Telfaire* instruction when the matter is covered by simpler instructions. *United States v. Cassasa*, 588 F.2d 282, 285 (9th Cir. 1978), *cert. denied*, 441 U.S. 909, 99 S.Ct. 2003, 60 L.Ed.2d 379 (1979); *United States v. Collins*, 559 F.2d 561, 565–66 (9th Cir.), *cert. denied*, 434 U.S. 907, 98 S.Ct. 309, 54 L.Ed.2d 195 (1977); *United States v. Masterson*, 529 F.2d 30, 32 (9th Cir.), *cert. denied*, 426 U.S. 908, 96 S.Ct. 2231, 48 L.Ed.2d 833 (1976).

## VI

We conclude that admission of the tainted in-court identifications of two eye witnesses violated Field's right to due process of law, and we reverse the conviction. We also conclude that the district judge's rulings as to suggested voir dire questions, the admissibility of prior convictions, and the requested jury instructions were not erroneous.

REVERSED AND REMANDED.

SCHROEDER, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that two of the identifications should not have been admitted and that the judgment must be reversed. With regard to the third, Jacobson, identification, I cannot agree that further proceedings on its admissibility, more than eighteen months after the robbery, are warranted. I would hold that Jacobson's identification should have been excluded as well.

Jacobson may well have had the opportunity to view the robber with great attentiveness, but the opportunity lasted only one minute and she was not wearing her glasses. The inconsistency between her post robbery description and her identification of the defendant weeks later, coupled with her lack of certainty, strongly indicate that the appearance of the robber never registered sufficiently to enable her to make any reliable identification. These facts must also be viewed in the light of impermissibly suggestive circumstances: the witness was present when an F.B.I. agent identified photographs of the defendant as the suspect; she saw the defendant handcuffed prior to trial. Her first positive identification of the defendant occurred, not coincidentally in my view, at trial.

I would therefore hold that all three identifications are inadmissible. Such a result would be fully in accord with *Manson v.*

---

6. Field contends that the district judge failed to balance probativeness against prejudice as required by Rule 609(a)(1) when ruling upon his motion in limine. We disagree. The fact that the district judge granted the motion as to Field's prior conviction for possession of heroin amply indicates that he was engaged in the process of balancing.

*Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), as well as the most recent holdings of this Court analyzing various factors influencing reliability: *Green v. Loggins*, 614 F.2d 219 (9th Cir. 1980); *Mata v. Sumner*, 611 F.2d 754 (9th Cir. 1979); *Washington v. Cupp*, 586 F.2d 134 (9th Cir. 1978), *cert. denied*, 441 U.S. 909, 99 S.Ct. 2003, 60 L.Ed.2d 379 (1979); *United States v. Crawford*, 576 F.2d 794 (9th Cir.), *cert. denied*, 439 U.S. 851, 99 S.Ct. 157, 58 L.Ed.2d 155 (1978); *United States v. Barron*, 575 F.2d 752 (9th Cir. 1978).