**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Carmen LEYVA, Defendant-Appellant.**

No. 80–1733.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 8, 1981.

Decided Oct. 13, 1981.

Certiorari Denied Jan. 11, 1982.
See 102 S.Ct. 1030.

Robert M. Holley, Asst. Federal Public Defender, Sacramento, Cal., for defendant-appellant.

Kristin Sudhoff, Asst. U. S. Atty., Sacramento, Cal., for plaintiff-appellee.

Before MERRILL, ADAMS,* and SNEED, Circuit Judges.

MERRILL, Circuit Judge:

Carmen Leyva appeals her conviction of ten counts of forging and uttering United States Treasury checks in violation of 18 U.S.C. § 495. The checks were Supplemental Security Income (SSI) checks, issued in the name of appellant's deceased grandfather.

Appellant is a thirty-six year old Spanish-American woman who has lived all but four years of her life in the United States where she secured education through the fifth grade. At about 8:30 in the morning on January 9, 1980, two Secret Service special agents went to appellant's home in Sacramento County, California, to question her regarding the checks. They identified themselves and informed appellant that they wished to question her, but that she was not under arrest and that they were not going to arrest her, and that any interview would be voluntary. Appellant allowed the agents to enter, and the interview took place in her kitchen. The agents took several handwriting exemplars from appellant, took her personal history in elaborate detail, and then showed her the forged checks and asked if she had endorsed her grandfather's name and cashed the checks. She admitted doing so, and stated that her ex-husband had forced her to do it. A statement was then written out by the agents in accordance with appellant's oral

statements and was signed and sworn to by appellant.

No *Miranda* warning was given to appellant by the agents.[1] The one agent who testified at the time of the motion to suppress stated that they did not regard appellant as in custody and therefore believed that she was not entitled to a warning. He also stated, however, that he believed that advising appellant of her rights might have frustrated his attempts to obtain her confession.

Appellant sought to suppress her confession on the grounds that she was entitled to a *Miranda* warning and that her confession was not voluntary. Her motion was denied. The court ruled that she was not in custody at the time her confession was given and therefore was not entitled to a *Miranda* warning. It found that the confession was voluntarily given. Appellant also made a pretrial motion to exclude use of a prior conviction of misdemeanor welfare fraud to impeach her in the event that she should testify in her own behalf. This motion was denied. After jury trial, appellant was convicted of all ten counts and was sentenced to one year in prison and required to make restitution. On appeal, she assigns error in three respects.

1. *Standard for Requiring Miranda Warning*

■ *Miranda* warnings are required in cases of custodial interrogation, but need not be given when the person being interrogated is not in custody or otherwise deprived of significant freedom of action. *See Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977) (per curiam). The district court ruled that the

---

* Honorable Arlin M. Adams, United States Circuit Judge of the Third Circuit, sitting by designation.

1. There was a dispute as to whether, at the time appellant signed the confession, she was aware of her *Miranda* rights. A Secret Service agent testified that before signing the confession appellant read aloud a statement of her rights printed on the form on which the confession was written and stated that she understood her rights. She then read the written

confession and signed it. The agent testified that as he had written out the statement, he had read it aloud to appellant who at one point corrected his narrative and initialled the correction. Appellant testified that she never read the confession before signing it. The district judge did not resolve this dispute, apparently being of the view that it was unnecessary since he was ruling that appellant was not in custody.

proper standard in this circuit for determining whether a suspect is in custody is the objective reasonable person standard: If a reasonable person under the circumstances would believe that he or she was not free to leave, or demand that the officers leave, then that person is in custody and is entitled to a *Miranda* warning. Such was the holding in *Lowe v. United States*, 407 F.2d 1391, 1397 (9th Cir. 1969). Certain factors were there specified as bearing on the question: the language of the officers in summoning the person; the physical surroundings; the extent to which the person is confronted with evidence of guilt; the extent of pressure exerted to detain. To the same effect are *United States v. Luther*, 521 F.2d 408, 410 (9th Cir. 1975) (per curiam), and *United States v. Curtis*, 568 F.2d 643, 646 (9th Cir. 1978).

Appellant does not challenge the district court's finding that she was not in custody based on the *Lowe* factors; rather, she challenges the sufficiency of those factors. She asserts that she suffers from an inability to speak and understand English adequately, and from a limited educational background, and that the district court should have considered these factors in determining whether appellant believed that she was not free to demand that the officers leave her home. The district court refused to consider these factors applied specifically to this appellant on the question of custody, believing that such application would be inconsistent with the objective reasonable person standard on which custody is to be determined. Appellant assigns this as error. We need not reach this question.

■ The record convincingly demonstrates that appellant had no difficulty with the English language, either at the time of the interview with the agents or during court proceedings. A neighbor and an acquaintance who have known appellant since 1973, and a Social Security claim representative who had interviewed appellant, testified that appellant both speaks and understands English well. In his ruling denying the motions to suppress the confession, the district judge commented that "there is persuasive evidence before the court that she was sufficiently fluent in English, that she understood what was going on."

Assuming that the degree of familiarity with the English language and the extent of educational background are relevant factors in a proper case, there was nothing here to suggest that application of these factors to a person with appellant's demonstrated familiarity with the language would in any degree have affected the outcome of the court's application of the reasonable person standard. (Further, it is apparent that these factors were considered by the court in determining whether the confession was voluntary.)

### 2. Voluntariness of the Confession

■ The district court took into consideration all factors set forth in 18 U.S.C. § 3501(b).[2] He recognized that in this case some of the factors pointed toward involuntariness, but concluded that other factors (including the low-key tone of the interview, the fact that appellant was sufficiently self-possessed and free from any feeling of coercion to tell the agents that one fact sought by them, the name of the father of

---

2. 18 U.S.C. § 3501(b) provides:
   "The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, including (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was

not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.
   The presence or absence of any of the above-mentioned factors to be taken into consideration by the judge need not be conclusive of the issue of voluntariness of the confession."

the child she was bearing, was "none of [their] business," and her apparent understanding of the nature of the offense with which she was charged) tipped the scale in favor of voluntariness. This was neither clear error nor abuse of discretion.

### 3. *Admission of Appellant's Misdemeanor Conviction*

Rule 609(a), Federal Rules of Evidence, reads as follows:

"For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment."

The district court ruled that evidence of appellant's prior conviction of misdemeanor welfare fraud was admissible under 609(a)(2).

Rule 403, Federal Rules of Evidence, reads as follows:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Appellant contended to the district court that the probative value of her prior conviction upon the issue of credibility was outweighed by the danger of unfair prejudice resulting from the likelihood that the jury would be improperly influenced on the issue of guilt. The district court refused to engage in the weighing of probative value against prejudice, and held that Rule 403 does not apply where the relevance of the earlier offense is upon the question of credibility. It construed Rule 609(a)(2) as a congressional judgment that the probative value of crimes involving dishonesty or false statements upon the issue of credibility always outweighs prejudice. This is assigned as error.

We agree with the district court. Our court has so held in *United States v. Field*, 625 F.2d 862 (9th Cir. 1980); *United States v. Cook*, 608 F.2d 1175 (9th Cir. 1979) (en banc), *cert. denied*, 444 U.S. 1034, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980); *United States v. Brashier*, 548 F.2d 1315 (9th Cir. 1976), *cert. denied*, 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 565 (1977); and *United States v. Dixon*, 547 F.2d 1079 (9th Cir. 1976).

In *United States v. Brashier, supra*, we stated:

" 'The admission of prior convictions involving dishonesty and false statement is not within the discretion of the Court. Such convictions are peculiarly probative of credibility and * * * are always to be admitted.' "

548 F.2d at 1326, *quoting* Conference Report on the Federal Rules of Evidence, No. 93–1597, 93d Cong., 2d Sess., at 4, *reprinted in* [1974] U.S.Code Cong. & Ad.News 7103. In *United States v. Cook, supra*, we stated:

"A good deal of scholarly debate illuminates the use of prior convictions for impeachment. When the prior conviction involved a crime more of violence than deception, there must be a balancing of values under Rule 609. Congress apparently intended to allow crimes of violence to retain some impeaching effect in some cases. * * * The rule also goes on to make it clear that convictions of crimes of deception are always provable, regardless of penalty, unless time-barred. Other serious crimes remain in the area of judicial discretion."

608 F.2d at 1187. In *United States v. Field, supra*, we stated:

"Such crimes [involving dishonesty or false statement] are always admissible; rule 609(a)(2) grants no judicial discretion for their exclusion. [citation omitted] Therefore, Field's prior conviction for for-

gery, a crime involving fraudulent falsification, was properly admissible."

625 F.2d at 871.

Appellant asserts that the cited cases did not discuss Rule 403 and whether that rule could apply to lessen the effect of Rule 609(a)(2). Appellant is correct. In *United States v. Field, supra*, we expressly declined to consider the question on the ground that it had not been raised below. 628 F.2d at 871 n.5. The Fifth Circuit has dealt with the question in *United States v. Toney*, 615 F.2d 277 (5th Cir. 1980). The court there pointed to the legislative history of the rules, some of which we have cited above. The court rejected the application of Rule 403 that appellant urges here:

"We hold, however, that Congress meant what it said in rule 609(a)(2)—that the fact of a prior conviction for an offense such as mail fraud is always admissible for impeachment purposes.

As we have observed, Congress used absolute language when discussing the admissibility of rule 609(a)(2) offenses. Congress carefully and extensively considered the prior crimes impeachment issue, devoting more time to it than any other rule of evidence. *See* J. Weinstein & M. Berger, *supra*. [3 J. Weinstein & M. Berger, Evidence ¶ 609 [03a], at 609–73 (1978)]. Rule 403 is a general rule, 'designed as a guide for the handling of situations for which no specific rules have been formulated.' 28 U.S.C. Rules of Evid. Advisory Comm. Notes at 550 (1976). Rule 609(a)(2) is a well-considered, specific provision enacted to cover a distinct issue in the law of evidence. Congress thoroughly considered the pros and cons of the mandatory admissibility of limited types of prior crimes evidence and determined that in certain cases it was to be the rule. Rule 403 simply has no application where impeachment is sought through a *crimen falsi*".

*Id.* at 280.

We agree.

Judgment affirmed.